18618

**B. C. HUGGINS, Respondent, v. WINN-DIXIE GREENVILLE, INC., Appellant**

(153 S. E. (2d) 693)

*Messrs. McDonald & McDonald,* of Winnsboro, and *Fulmer, Barnes, Berry & Austin,* of Columbia, *for Appellant,*

*Messrs. John A. Martin,* of Winnsboro, and *Henry Hammer* and *Henry H. Edens,* of Columbia, *for respondent,*

March 13, 1967.

LIONEL K. LEGGE, Acting Justice.

The complaint in this case alleged two causes of action:— the first, for malicious prosecution; the second, for abuse of process. The answer denied generally the allegations of each cause of action and alleged that the acts complained of were reasonable and prudent in the circumstances and were

done in good faith and without malice. Upon the trial, defendant's motions for nonsuit and directed verdict having been denied, the jury rendered a verdict for the defendant on the first cause of action and for the plaintiff on the second. The plaintiff has not appealed. The defendant has appealed from the court's refusal of its motion for judgment *n. o. v.* or new trial as to the cause of action for abuse of process.

"The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance of any formal use of the process itself, which constitutes the tort." Prosser, Handbook of the Law of Torts, Second Edition, Section 100, pp. 668, 669.

To cause process to issue without justification is an essential element of malicious prosecution, but not of abuse of process. In the latter, the issuance of the process may be justified in itself, it is the malicious misuse or perversion of the process for an end not lawfully warranted by it that constitutes the tort known as abuse of process. 1 Am. Jur. (2d), Abuse of Process, Section 1, p. 250. See also *Mullins v. Sanders* (1949), 189 Va. 624, 54 S. E. (2d) 116.

As stated in 34 Am. Jur., Malicious Prosecution, Section 3, p. 704, the distinction between an action for malicious prosecution and one for abuse of process is "that a malicious

prosecution consists in maliciously causing process to be issued, whereas an abuse of process is the employment of legal process for some purpose other than that which it was intended by the law to effect—the improper use of a regularly issued process."

Our attention has been directed to no case in which this court has heretofore considered a cause of action for abuse of process. In *George v. Leonard* (C. A. 4, 1948), 169 F. (2d) 177, such an action was recognized as one at common law and maintainable in South Carolina, and attention was called to the distinction, above referred to, between it and an action for malicious prosecution.

In brief, the plaintiff's testimony was: that on the afternoon of Thursday, January 25, 1962, he went into defendant's store primarily to buy some cooking-oil, which was on special sale; that while in the store he decided to buy a twenty-five-pound sack of potatoes specially priced at sixty-nine cents, and two packages of boiled ham, suitable for sandwiches, and costing fifty-nine cents each; that when the "bag-boy" brought him the cooking-oil, which was in a large glass container, he dropped the packages of ham, about four inches square, into his coat pocket, as he was not using one of the pushcarts, and went on to the vegetable counter where he picked up the bag of potatoes; and that he then proceeded to the check-out counter, carrying the bottle of oil and the sack of potatoes, for which he paid, and forgetting that he had the ham in his pocket; that when he reached the door on his way out the store manager, who had checked him out, stopped him and asked if he had forgotten to pay for the ham, whereupon he replied that he had forgotten about it, took it out of his pocket, and offered to pay for it, presenting two one-dollar bills for that purpose; that the manager, refusing to accept the proffered payment, called him to the rear of the store, where he asked him why he had done this, to which he replied that he had made a mistake and was sorry that it had happened; that plaintiff repeated his offer to pay for the ham,

but the manager replied that he would have to pay ten dollars, which he refused to do; that the manager then had one of the clerks call the police, two of whom arrived shortly thereafter and, after conferring with the manager, arrested the plaintiff and took him to jail, where he was booked for petit larceny, released upon posting a cash bond, and told to appear in City Court the following Monday; that upon his appearance in City Court as so ordered his case was not called; that he was subsequently arrested and charged with shoplifting and taken by the police officers to the office of the Clerk of Court, where he posted bond for his appearance on that charge; and that upon his trial on that charge he was found not guilty. (The indictment, in evidence, charged that on January 21, 1962, the plaintiff wilfully, unlawfully and feloniously had taken from the defendant's store two packages of meat without paying therefor, in violation of Section 16-359.2 of the 1962 Code, which is the statute relating to shoplifting.)

Following is the substance of the testimony of defendant store manager:

On the afternoon in question one of his clerks came to the check-out counter, where he was on duty, and informed him by code that the plaintiff, who was approaching the counter, had some merchandise concealed about his person. When plaintiff had paid for the potatoes and the cooking oil, witness asked him if that was all, to which the plaintiff made no answer. Witness then followed him, stopped him outside of the store, and asked him if he had forgotten to pay for his ham. Plaintiff replied in the affirmative and offered to pay for it. Witness then asked plaintiff to step into the rear of the store, where witness asked him why he had forgotten to pay for the ham, to which plaintiff replied that he had forgotten it. Witness then asked plaintiff if he would be willing to pay ten dollars for merchandise that witness felt he had previously taken from the store. Plaintiff replied that he would not, and that he had a brother who was a lawyer and that he "would go further in this."

Witness, becoming frightened at the suggestion of a lawsuit, felt that he had better go ahead and call the police into the matter, which he did. On cross examination he repeated that his demand for payment of ten dollars was based on his feeling that plaintiff had previously taken merchandise without paying for it; and he testified that if plaintiff had given him the ten dollars he would not have called the police but would have asked plaintiff to leave the store and not come into it again. He testified further that he did not swear out a warrant but that he told the policemen to take the plaintiff to jail.

Viewing this testimony in the light most favorable to the plaintiff's case, and resolving its conflicts accordingly, we cannot say that there was nothing to take the case to the jury on the cause of action for abuse of process, *i. e.,* on the theory that the criminal process of the court was used for the ulterior purpose of coercing the plaintiff into paying ten dollars for merchandise that the store manager "felt" he had previously taken, rather than for the sole purpose for which it could properly have been intended, *viz.,* to punish the plaintiff for "shoplifting" two packages of ham. Appellant contends that since respondent's arrest in the store and his subsequent arrest on the warrant for shoplifting took place after the actions of its store manager, those actions did not constitute abuse of process because "process" was not then in existence. The argument is unsound in our opinion. Appellant cannot divorce itself from responsibility for the proceedings that resulted from the store manager's actions; and the testimony in this record warrants the inference that the arrest, the charge of petit larceny, and the subsequent arrest, indictment and trial on the charge of shoplifting, all of which on their face related only to two packages of ham, were tainted throughout with the ulterior and improper purpose of coercing the respondent to pay for merchandise that the store manager "felt" or suspected he had previously taken. The exceptions charging error in refusal of appellant's motion for judgment *n. o. v.* are overruled.

In the course of his charge on abuse of process the trial judge, after clearly and accurately expounding the elements of the tort, said: "By way of example, when a warrant of arrest is used to extort money or other property from the people, an abuse of process has been used." We do not agree with appellant's contention that the quoted language was a charge on the facts. It immediately followed the statement that "when the process of arrest, either civil or criminal, is used to effect an objective not within its scope, there is an abuse of process for which action will lie in this court." Considered in that context we think that the portion of the charge here complained of was unobjectionable.

Appellant also argues that the trial judge charged on the facts when he said to the jury that "it is unlawful to extort money from another by means of an arrest or to require one to cease and desist from visiting places of public use by other citizens of this State." We find nothing in the pleadings or in the testimony suggesting that the arrest of the respondent was for the ulterior purpose of compelling him to "cease and desist from visiting" appellant's store, and that part of the quoted language is subject to criticism as being unrelated to any issue in the case; but appellant does not attack it on that ground. Considered in connection with the rest of the charge on abuse of process, the statement above quoted was merely illustrative and in our opinion did not amount to a charge on the facts.

By one exception, appellant charges that the trial judge erred in instructing the jury as follows: "I charge you further that an officer or a citizen may not lawfully arrest another citizen for the crime of shoplifting or petit larceny without a warrant being first issued therefor." The error assigned here is that this principle of law is not applicable to the cause of action for abuse of process, and that the instruction was therefore prejudicial. The quoted statement was in that portion of the charge that was addressed to the cause of action for abuse of process,

and it was expressly referable to that cause of action. In our opinion it was erroneous and prejudicial. The action for abuse of process is not founded on illegality of process; the arrest may be perfectly legal, and in the present case its legality was not in issue. Illegal arrest gives rise to a cause of action for false arrest or false imprisonment, but not to one for abuse of process. The abuse, the perversion, of the process, not its illegality, is the foundation of the cause of action with which we are here concerned. We think that the instruction complained of was such as would tend to confuse the jury and lead them to conclude that the absence of a warrant for the initial arrest of the respondent would in itself afford a basis for his cause of action for abuse of process.

Finally, appellant asserts that there was reversible error in the following portion of the general charge:

"Now, actual damages are often called compensatory damages, damages to make one whole, put one in the same or better position than he was prior to the injury or damage." The exception is directed to the use of the words *"or better"*, and in our opinion it must be sustained despite the fact that appellant has not contended that the verdict was excessive; because the manifest error in the use of the italicized words went not only to the measure, but to the whole concept of damages.

Reversed and remanded for new trial.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.