635 S.E.2d 562

**LaToya GUIDER, Respondent,**

v.

**CHURPEYES, INC., Appellant.**

**No. 4149.**

Court of Appeals of South Carolina.

Heard June 15, 2006.
Decided Aug. 14, 2006.
Rehearing Denied Sept. 20, 2006.

426

Regina H. Lewis and James C. Leventis, Jr., both of Columbia, for Appellant.

Paul W. Owen, Jr., of Columbia, for Respondent.

HEARN, C.J.:

In this action for malicious prosecution and abuse of process, Churpeyes, Inc., (Church's) appeals a jury verdict in favor of LaToya Guider. Church's alleges the trial court erred in denying its directed verdict motions, admitting testimony from Guider's coworker, instructing the jury on punitive damages and breach of trust with fraudulent intent, and failing to deny or reduce actual and punitive damages. We reverse.

## FACTS

Church's operates a chicken restaurant on Taylor Street in Columbia. Guider worked as general manager of the restaurant in May 2003.

Shortly before closing on the night of May 25, 2003, someone entered the restaurant through an unlocked rear door and robbed it of approximately $860. The shift manager on duty, Selena Harrison, called Guider at home to inform her of the robbery. Guider went to the restaurant, where she found police investigating the incident. She contacted Church's area manager, Jimmy Bailey, to inform him of the incident. Bailey told Guider to let police continue their investigation and that he would discuss the matter with her later.

The next day, Bailey met with Guider and told her that leaving the back door of the restaurant unlocked violated company policy and that the employees who worked on the shift when the robbery occurred would be fired. Guider protested the decision to terminate the employees as unfair, arguing the policy had never been enforced. She also intervened on Harrison's behalf with Jerome York, the Vice President of Operations for Church's.

On June 4, 2003, Guider received a paycheck from which $430 had been deducted. Guider also received a document entitled "Deduction Contract" that Bailey drafted with York's approval. The document styled itself as a "contract" between Guider and Church's in which Guider agreed to have $859 deducted from two paychecks in installments of $430 and $429. According to Bailey and York, the document represented an agreement reached with Guider in which she would reimburse Church's for the money taken in the robbery. In return,

Church's would not terminate Harrison. Guider disputed reaching any such agreement, but nevertheless signed the Deduction Contract.[1]

Guider resigned the following morning. Later that day, she took $1,004 cash from the restaurant's sales proceeds to deposit in Church's bank account. She presented the bank with a deposit slip indicating $1,004 was being deposited. However, she only included $204 in cash with the deposit slip and intentionally kept the remaining $800.

Immediately after leaving the bank, Guider returned to the restaurant and told Bailey, "I need to speak to you about my money. I got my money back." She neither specified that she had kept $800 of the money she was supposed to deposit nor offered to return the money. Bailey told Guider he was busy with customers and did not have time to talk to her. Guider gathered her personal items and left. Later that evening, Guider again spoke to Bailey after she called and paged him throughout the day. She told him, "I did something that was wrong. I took money out of that $1,004 deposit." She added that she would like to meet and discuss returning the $800 to Church's and receiving the money it withheld from her paycheck. However, despite Guider's repeated attempts to meet with Bailey regarding the money, he either ignored her calls or claimed he was too busy to meet with her.

On June 11, 2003, Bailey asked police to issue an arrest warrant for Guider on breach of trust charges. Six days had passed since Guider informed him that she kept part of the money she was supposed to deposit. The arrest warrant affidavit provided by Bailey alleged Guider admittedly withheld the money she was entrusted to deposit for Church's. The affidavit further alleged Guider retained the money "for her own personal use."

Guider eventually returned the money to Church's by depositing the funds in the company's bank account on June 13,

---

1. Guider challenged Church's actions in a complaint she filed with the South Carolina Department of Labor, Licensing and Regulation (LLR) on June 11, 2003. LLR's Office of Wages and Child Labor eventually found the Deduction Contract invalid and ordered Church's to repay Guider the money it withheld from her paycheck.

2003. She had retained possession of the funds for eight days, during which time Church's did not have access to the funds. A municipal court judge signed the arrest warrant on June 19, 2003. Police served Guider with the warrant on June 29, and arrested her on the charges. The charges were dismissed the following day when Church's failed to appear at Guider's hearing.

Thereafter, in October 2003, Guider initiated the present action alleging malicious prosecution, abuse of process, failure to pay wages, false arrest, and violation of Guider's civil rights. Guider voluntarily dismissed her civil rights claim before the trial. The trial court dismissed the false arrest claim in pretrial proceedings.

The matter proceeded to jury trial in November 2004. The jury returned a verdict in the amount of $75,000 in actual damages and $100,000 in punitive damages on the malicious prosecution and abuse of process claims. Church's made timely post-trial motions for judgment notwithstanding the verdict (JNOV), new trial *nisi*, and new trial *nisi remittitur*. The trial court denied the motions. This appeal followed.

## STANDARD OF REVIEW

"In ruling on a motion for directed verdict, a court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party." *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 334 S.C. 469, 476, 514 S.E.2d 126, 130 (1999). However, "the appellate court should not ignore facts unfavorable to the opposing party." *Collins v. Bisson Moving Storage, Inc.*, 332 S.C. 290, 296, 504 S.E.2d 347, 350 (Ct.App.1998). "Rather, it must determine whether a verdict for the opposing party would be reasonably possible under the facts as liberally construed in his favor." *Id.* The issue must be submitted to a jury when material evidence tends to establish the issue in the mind of a reasonable juror. *Hanahan v. Simpson*, 326 S.C. 140, 149, 485 S.E.2d 903, 908 (1997). "However, this rule does not authorize submission of speculative, theoretical and hypothetical views to the jury." *Id.* "[W]hen only one reasonable inference can be deduced from the evidence, the question becomes one of law for the court." *Id.*

## LAW/ANALYSIS

### I. Directed Verdict on Malicious Prosecution

Church's argues the trial court erred in denying its directed verdict motion on Guider's malicious prosecution claim because she failed to prove Church's lacked probable cause to bring a breach of trust charge against her. We agree.

A plaintiff in a malicious prosecution action must show (1) institution or continuation of original judicial proceedings, either civil or criminal; (2) by, or at the insistence of, the defendant; (3) termination of such proceeding in plaintiff's favor; (4) malice in instituting such proceedings; (5) want of probable cause; and (6) resulting injury or damage. *Parrott v. Plowden Motor Co.*, 246 S.C. 318, 321, 143 S.E.2d 607, 608 (1965). Church's does not dispute its actions satisfy the first two prongs of this test. Instead, it focuses its argument on the prong related to probable cause.[2]

"An essential element of malicious prosecution is the institution of judicial proceedings without probable cause against the plaintiff." *Kinton v. Mobile Home Indus., Inc.*, 274 S.C. 179, 181, 262 S.E.2d 727, 728 (1980). "Probable cause in this context does not turn upon the plaintiff's guilt or innocence, but rather upon whether the facts within the prosecutor's knowledge would lead a reasonable person to believe the plaintiff was guilty of the crimes charged." *Id.* When determining if probable cause exists, the court must consider the facts from the point of view of the party prosecuting. *Eaves v. Broad River Elec. Co-op., Inc.*, 277 S.C. 475, 478, 289 S.E.2d 414, 416 (1982). "[T]he question is not what the actual facts were, but what [the prosecuting party] honestly believed them to be." *Id.*

Looking at the facts from Church's point of view for the determination of probable cause, Church's filed the breach of trust charges knowing Guider had admittedly retained $800

---

2. Church's also briefly argues Guider failed to meet her burden of proving the remaining elements of malicious prosecution. The issues of malice and damages were not raised in the directed verdict motion, and thus are not preserved for our review. *See Scoggins v. McClellion*, 321 S.C. 264, 267, 468 S.E.2d 12, 14 (Ct.App.1996) (finding issues not raised in directed verdict motion unpreserved for appellate review).

in company funds with which she had been entrusted on June 5, 2003. Moreover, Guider retained possession of the $800 for a total of eight days before she returned the money to Church's. Church's filed the charges after Guider told Bailey, "I got my money back," "I did something that was wrong," and "I took money out of that $1,004 deposit." Guider had not returned the funds when the charges were filed.

A reasonable party could only conclude Church's had probable cause to believe Guider guilty of breach of trust. We find Guider failed to meet her burden of proving Church's lacked probable cause to bring breach of trust charges against her. *See Parrott*, 246 S.C. at 322, 143 S.E.2d at 609 (holding the plaintiff bears the burden of proving the person or entity bringing the charges lacked probable cause to pursue charges against him). Thus, viewing these facts in the light most favorable to Guider, the trial court should have granted Church's motion for directed verdict on the malicious prosecution charge as a matter of law. *Id.* at 323, 143 S.E.2d at 609 (holding although the question of whether probable cause exists is ordinarily a jury question, it may be decided as a matter of law when the evidence yields but one conclusion).

## II. Directed Verdict on Abuse of Process

Church's next argues the trial court erred in denying its directed verdict motion on Guider's abuse of process claim. We agree.

"The abuse of process tort provides a remedy for one damaged by another's perversion of a legal procedure for a purpose not intended by the procedure." *Food Lion, Inc. v. United Food Commercial Workers Int'l Union*, 351 S.C. 65, 69, 567 S.E.2d 251, 253 (Ct.App.2002). "The essential elements of abuse of process are an ulterior purpose and a willful act in the use of the process not proper in the conduct of the proceeding." *Hainer v. Am. Med. Int'l, Inc.*, 328 S.C. 128, 136, 492 S.E.2d 103, 107 (1997). "An ulterior purpose exists if the process is used to gain an objective not legitimate in the use of the process." *First Union Mortgage Corp. v. Thomas*, 317 S.C. 63, 74, 451 S.E.2d 907, 914 (Ct.App.1994). "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding

itself." *Hainer*, 328 S.C. at 136, 492 S.E.2d at 107. Regardless, "there is no liability when the process has been carried to its authorized conclusion, even though with bad intentions." *Thomas*, 317 S.C. at 74–75, 451 S.E.2d at 914.

Viewing the facts in the light most favorable to Guider, we find the record devoid of evidence that Church's misused the legal process or operated with an illegitimate purpose. Instead, the evidence shows Church's used the legal process with the objective of seeking redress against a former employee who admittedly took and retained company funds. Moreover, when Guider returned the funds, Church's stopped pursuing the criminal charges against her. This is clearly a legitimate use, not a perversion, of the legal process.

## CONCLUSION

We find the trial court should have granted directed verdicts to Church's on Guider's claims for malicious prosecution and abuse of process. For the forgoing reasons, the verdict in favor of Guider is

**REVERSED.**[3]

GOOLSBY and ANDERSON, JJ. concur.

---

3. Because we reverse on this issue, we decline to address Church's remaining arguments. *See Whiteside v. Cherokee County School Dist. No. One*, 311 S.C. 335, 428 S.E.2d 886 (1993) (holding an appellate court need not address remaining issues when the resolution of a prior issue is dispositive).