665 S.E.2d 211

**Shawn M. SWICEGOOD, Respondent,**

v.

**Leon LOTT, in his official capacity as Sheriff of Richland County, Appellant.**

No. 4405.

Court of Appeals of South Carolina.

Heard April 9, 2008.
Decided June 6, 2008.
Rehearing Denied Aug. 26, 2008.

Andrew F. Lindemann, Robert D. Garfield, William H. Davidson, II, of Columbia, for Appellant.

S. Jahue Moore, of West Columbia, for Respondent.

HEARN, C.J.

Sheriff Leon Lott, in his official capacity as Sheriff of Richland County, appeals the circuit court's failure to grant his motions for directed verdict and judgment notwithstanding the verdict (JNOV), as well as his post-trial motions for a new trial absolute and new trial *nisi.* We affirm.

## FACTS

The Richland County Sheriff's Department (Department) was conducting an investigation on a former deputy, Brian Gailey, based on allegations of criminal activity. The Department became convinced then-current deputy Shawn Swicegood had information on Gailey because the two were friends and former co-workers. Upon arriving at work on February 28, 2003, Swicegood was taken into the office of Chief Investigator David Wilson for questioning. Swicegood repeatedly denied having any knowledge of Gailey's alleged illegal activity.

Wilson did not believe Swicegood, asking him if he would submit to a polygraph examination. Swicegood agreed, and ultimately was administered three polygraph exams, which the Sheriff's Department believed indicated Swicegood had not

told the truth. In preparation for the polygraph, Swicegood told the examiner he was in possession of an unauthorized assault rifle which he had built from scrap metal pieces. The Department contacted the Bureau of Alcohol Tobacco and Firearms, and federal weapons charges were initiated against Swicegood, to which he ultimately pled guilty and served eighteen months in federal prison.

On the same day, and after Swicegood's interrogation had begun, Department Captain James Stewart, at Wilson's direction, began looking into the hours Swicegood had reported on his Department timesheet. Specifically, Stewart was directed to compare Swicegood's reported hours as a deputy, against the hours Swicegood had reported participating in the Department's Special Duty Program. The program, also known as moonlighting, was encouraged by the Department as an opportunity for deputies to find extra work to supplement their incomes. Swicegood participated in the moonlighting program, including providing security at a Cash–O–Matic location. Stewart's investigation ultimately yielded three instances where Swicegood's security moonlighting overlapped with hours he had submitted to the Department for his deputy duties.[1] These instances were for fifteen minutes each, and because Stewart believed this represented a pattern, he did not approach Swicegood in order to allow him a chance to explain the discrepancies. Instead, Stewart went to a magistrate and swore out three warrants for Swicegood's arrest for obtaining signature or property by false pretenses.

The three warrants were then given to Wilson to serve on Swicegood during the still ongoing interrogation. Throughout the interrogation, Wilson stated he would make both the state and federal charges "go away" if Swicegood would give the information that the Department wanted on Gailey. When Swicegood refused to perjure himself, he was arrested, and spent approximately the next eighteen hours in jail. By the time Swicegood posted bail, reports of his arrest and charges had been given by the Department to The State newspaper, other news agencies, and were posted on the internet.

---

1. Based on Swicegood's annual wage at the time, each alleged instance amounted to $3.75 of "double-dipping." Additionally, testimony indicates it was common practice to fill out timesheets with expected hours at the beginning of each month, before actually working the hours.

Swicegood brought an action for false arrest, malicious prosecution, abuse of process, and negligence against Lott in his official capacity. On summary judgment motion, the circuit court dismissed Stewart as a defendant, and dismissed all causes of action against Lott except for the abuse of process claim. A jury trial was held only on the abuse of process action which resulted in a $150,000 jury verdict in favor of Swicegood. This appeal followed.

## STANDARD OF REVIEW

"In ruling on motions for directed verdict and JNOV, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions and to deny the motions where either the evidence yields more than one inference or its inference is in doubt." *Law v. S.C. Dept. of Corrections*, 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006). An appellate court will only reverse the trial court's ruling on a JNOV motion when there is no evidence to support the ruling or where it is controlled by an error of law. *Id.* at 434–35, 629 S.E.2d at 648

## LAW/ANALYSIS

### I. Sovereign Immunity Under S.C.Code Ann. § 15–78–60(17)

Lott contends the circuit court erred in denying his motions for a directed verdict and judgment notwithstanding the verdict (JNOV) on the grounds that he is entitled to sovereign immunity pursuant to an exception of the general waiver of immunity under the South Carolina Tort Claims Act.[2] Specifically, Lott maintains an action for abuse of process necessarily involves alleging elements of actual malice and intent to harm, for which he would be entitled to immunity as a matter of law under Section 15–78–60(17) of the South Carolina Code (2005). We disagree.

The tort of abuse of process consists of two elements: an ulterior purpose, and a willful act in the use of the process

---

2. S.C.Code Ann. § 15–78–10 (2005).

that is not proper in the regular conduct of the proceeding. *Hainer v. Am. Med. Int'l, Inc.*, 328 S.C. 128, 136, 492 S.E.2d 103, 107 (1997). In explaining the elements of abuse of process, the circuit court charged the jury that Swicegood must prove by a greater weight or preponderance of the evidence that Lott "had some ulterior purpose or bad intent." Additionally, in explaining the second element of the tort, the circuit court explained "it is the malicious misuse or perversion of the process for a result that's not legitimate for its purpose that constitutes an abuse of process."

■ Section 15–78–60(17) provides: "The governmental entity is not liable for a loss resulting from . . . (17) employee conduct outside the scope of his official duties or which constitutes actual fraud, *actual malice, intent to harm*, or a crime involving moral turpitude." (emphasis added). Thus, Lott contends, the preceding jury charge necessarily involves a finding of both malicious conduct sufficient to rise to the level of actual malice, and intent to harm. As stated above, the tort of abuse of process contains neither an element of intent to harm, nor actual malice. Although harm may result from the "bad intent" used by the circuit court to describe an ulterior purpose, proving an abuse of process claim does not require a party to intend such harm. *See Eldeco, Inc. v. Charleston County Sch. Dist.*, 372 S.C. 470, 481, 642 S.E.2d 726, 732 (2007) (finding the comparable torts of tortious interference with contractual relations, and intentional interference with prospective contractual relations do not contain an intent to harm element providing immunity under § 15–78–60(17)).

Similarly, there is no required element of actual malice. Actual malice in this situation refers to common law actual malice, and has been defined by situations where "defendant was actuated by ill will in what he did, with the design to causelessly and wantonly injure the plaintiff." *Jones v. Garner*, 250 S.C. 479, 488, 158 S.E.2d 909, 914 (1968); *see also* Hubbard and Felix, The South Carolina Law of Torts, p. 398. The improper purpose element of an abuse of process claim usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself. Therefore, it is the use of the process to coerce or extort that is the abuse, and need not be accompanied by any ill will. As the tort of abuse of process does not require a finding of

actual malice or intent to harm, the circuit court did not err in denying Lott's motions for directed verdict and JNOV as to his immunity under § 15-78-60(17).

## II. Arrest Warrants Carried To Their Authorized Conclusion

■ Lott next contends the circuit court erred in failing to grant his motions for directed verdict and JNOV because the process had been carried to its authorized conclusion. We disagree.

Lott maintains that because the arrest warrants obtained by Stewart for the alleged double-dipping were carried to their authorized conclusion, i.e., Swicegood was taken to trial and the charges were ultimately dismissed, then there should be no liability for the tort of abuse of process. This logic is misplaced. Lott relies upon the isolated statement in *Guider v. Churpeyes, Inc.* that "[*r*]egardless, there is no liability when the process has been carried out to its authorized conclusion, even though with bad intentions." 370 S.C. 424, 432, 635 S.E.2d 562, 566 (Ct.App.2006) (emphasis added). However, this statement should not be interpreted to mean that no liability may ever arise where the process is carried to its authorized conclusion. Indeed, the essence of the tort of abuse of process centers on events occurring *outside* of the process, namely:

> The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

*Huggins v. Winn–Dixie Greenville, Inc.*, 249 S.C. 206, 209, 153 S.E.2d 693, 694 (1967) (citation omitted). The existence of probable cause for the double-dipping arrest warrants is not in dispute. Nonetheless, there is clearly evidence in the record the Department initiated the investigation into Swicegood's moonlighting with the intent of coercing him into implicating Gailey. The "willful act" element of the abuse of process tort

has been interpreted by this court to consist of three different components: 1) an act that is either willful or overt; 2) in the use of the process; 3) that is ultimately reprehensible because it is either (a) unauthorized or (b) aimed at an illegitimate collateral objective. *Food Lion, Inc. v. United Food & Commercial Workers Intern. Union*, 351 S.C. 65, 71, 567 S.E.2d 251, 254 (Ct.App.2002). The evidence before us is sufficient to create a jury question as to both the ulterior purpose element and all three aspects comprising the willful act element.

Our decision that a jury issue was created on the peculiar facts of this case should not be interpreted to chill law enforcement activity in its legitimate procurement of cooperation to further investigations. The eliciting of cooperation from an accused in one case in exchange for leniency with existing charges, where the accused genuinely has information that would benefit law enforcement, does not, and never has fallen within the tort of abuse of process. Here, however, taking the facts in the light most favorable to Swicegood, as we must for the purposes of evaluating this issue at the directed verdict and JNOV stage, the evidence is susceptible to the inference that the primary purpose of the investigation and issuance of warrants was to coerce or extort Swicegood's testimony against Gailey, even though he had previously indicated he had no knowledge that would further the Department's investigation. Thus the facts of this case are distinguished from normal police investigative procedure. As a result, the circuit court did not err in denying Lott's motions on this issue.

### III. Causal Connection Between the Abuse of Process and Damages

Lott next contends the circuit court erred in denying his motions for directed verdict and JNOV because Swicegood failed to prove the causal connection between the alleged misuse of the process and his claimed damages. He maintains that under abuse of process, recoverable damages are only those resulting from the misuse of the process, but not those losses resulting from the proper use of the process.

The South Carolina Supreme Court has addressed the issue of damages in an abuse of process action in the second *Huggins* case to come before the court after remand and

appeal. It provides an appropriate explanation of the damages recoverable from an abuse of process claim. *Huggins v. Winn–Dixie Greenville, Inc.*, 252 S.C. 353, 166 S.E.2d 297 (1969). The court concluded "[d]amages recoverable for abuse of process are compensatory for the natural results of the wrong, and may include recompense for physical or mental injury; expenses; loss of time; and injury to business, property or financial standing." *Id.* at 362, 166 S.E.2d at 301 (citation omitted). In finding that once abuse of process is proven, damages are recoverable, the court went on to explain that "there may be recovery without proof for harm to the plaintiff's reputation, standing and credit," as well "as to humiliation and other mental suffering or injury to [a person's] feelings." *Id.* at 363, 166 S.E.2d at 301 (citation omitted). Moreover, if some damage to the reputation could be considered a natural and probable consequence of the abuse of process, then submission to the jury is proper, even if there was no proof as to the damage. *Id.* Swicegood testified as to the frustration, embarrassment, and humiliation he experienced having to face his family, friends and members of his church, after his arrest had been leaked to the press. We find this to be sufficient evidence to support the submission of damages to the jury.

## IV. New Trial; New Trial *Nisi Remittitur*

Lott next contends the circuit court erred in failing to grant his post-trial motion for a new trial absolute. We disagree.

A circuit court may grant a new trial absolute on the ground that the verdict is excessive or inadequate. *Rush v. Blanchard,* 310 S.C. 375, 379, 426 S.E.2d 802, 805 (1993). The circuit court should grant a new trial absolute on the excessiveness of the verdict only if the amount is so grossly inadequate or excessive as to shock the conscience of the court and clearly indicates the figure reached was the result of passion, caprice, prejudice, partiality, corruption or some other improper motives. *Id.* at 379–80, 426 S.E.2d at 805.

The grant or denial of new trial motions rests within the discretion of the circuit court, and its decision will not be disturbed on appeal unless its findings are wholly unsupported by the evidence, or the conclusions reached are

controlled by error of law. *Umhoefer v. Bollinger,* 298 S.C. 221, 224, 379 S.E.2d 296, 297 (Ct.App.1989). "In deciding whether to assess error to a court's denial of a motion for a new trial, we must consider the testimony and reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.*

■ Lott first maintains the circuit court erred in denying his motion for a new trial absolute because the jury's charge, which defined ulterior purpose as "bad intent," was incorrect and confusing to the jury. Lott failed to lodge an objection at the close of the jury charge. Only after the jury requested to be re-charged on the law of abuse of process and ulterior motive did counsel take exception to the charge. *See Lundy v. Lititz Mut. Ins. Co.,* 232 S.C. 1, 10, 100 S.E.2d 544, 548 (1957) (finding an objection was waived as untimely, where counsel did not object at the conclusion of the main charge, but later objected to additional instructions that were substantially the same as the main charge).

■ Lott next contends the circuit court erred because of the excessiveness of the verdict. We disagree. Swicegood lost his job, and testified as to the humiliation he felt amongst his family, friends and church members as a result of this process, and, as noted above, this is evidence of compensable damages for an abuse of process claim. The circuit court did not abuse its discretion in finding the award of $150,000 was neither so excessive as to shock the conscience, nor the result of passion, caprice, prejudice, partiality, corruption or some other improper motives.

■ Finally, Lott contends the circuit court erred in failing to grant his motion for a new trial *nisi remittitur.* Although Lott claims to have made a *nisi* motion, and that it was denied by the circuit court, a review of the record before us finds no motion for a new trial *nisi.* As a result, this issue is unpreserved for our review. *See Peterson v. Richland County,* 335 S.C. 135, 515 S.E.2d 553 (Ct.App.1999) (although brief indicated that a motion to reconsider was filed and denied, neither the motion nor the order were in the record on appeal).

We hold the circuit court did not err in failing to grant Lott's motions for directed verdict and JNOV, or his post-trial motions for a new trial absolute and new trial *nisi*. Accordingly, the decision of the circuit court is

**AFFIRMED**

PIEPER, J., and GOOLSBY, A. J., concur.