756 S.E.2d 128

**Ursula R. PALLARES, Appellant,**

v.

**Sharon R. SEINAR and Lisa A. Maseng, Respondents.**

Appellate Case No. 2011–201026.

No. 27364.

Supreme Court of South Carolina.

Heard Sept. 18, 2013.

Decided March 12, 2014.

362

John D. Elliott, of Columbia, for Appellant.

Tobias Gavin Ward, Jr., James Derrick Jackson, Evans T. Barnette, of Johnson & Barnette, LLP, and Robert A. McKenzie, of McDonald, McKenzie, Rubin, Miller and Lybrand, LLP, all of Columbia, for Respondents.

Justice BEATTY.

Ursula R. Pallares ("Pallares") brought this civil suit alleging five claims against two of her neighbors, Sharon R. Seinar and Lisa A. Maseng ("Respondents"). The circuit court granted partial summary judgment to Respondents on Pallares's claims for malicious prosecution, abuse of process, and civil conspiracy. Pallares appealed, and this Court certified

the case for review pursuant to Rule 204(b), SCACR. We affirm in part, reverse in part, and remand.

## I. FACTS

As one party aptly describes the situation, "Appellant and the Respondents are neighbors who obviously do not get along." The three parties live in separate residences in the Shandon/Rosewood area of Columbia. Pallares filed an amended complaint on March 7, 2008 asserting Respondents had "mounted a campaign to harass and humiliate" her and to "drive her from her home." Pallares outlined four areas of conduct by one or both Respondents involving (1) code violations at Pallares's home, (2) nuisance animals, (3) a petition for a mental evaluation, and (4) requests for restraining orders, which Pallares averred gave rise to civil tort liability.

Pallares first contended Respondents had "filed baseless complaints against her with the City of Columbia for various housing and building code violations, only to have those complaints dismissed by the authorities, on or about April 27th, 2006." Pallares also "allege[d] that on August 4th, 2006 defendant Seinar instigated criminal charges against [her] alleging that [her] pet dogs were a nuisance, in violation of the City's criminal ordinances." Pallares contended "that on October 30th, 2006 these charges were dismissed as groundless."

Pallares next asserted "that on May 18, 2007, defendant Seinar filed a petition with the Richland County Probate Court alleging [Pallares] was mentally ill, and in need of a mandatory mental evaluation."[1] Pallares contended "the evaluation was normal, and the petition was dismissed." Pallares lastly alleged Respondents filed actions in the Richland County Magistrate's Court seeking restraining orders against her, but the requests were denied.[2] Pallares contended all of

---

1. The petition was signed by both Respondents, as was clarified at the hearing in this matter. An Order for Examination was issued by the Richland County Probate Court on June 7, 2007. Two examiners prepared reports dated June 18, 2007 concluding Pallares was not suffering from mental illness.

2. Respondents made the requests after Pallares was found not to be mentally ill. In her statement in support of a restraining order, Maseng opined that if Pallares was not mentally ill, then she must be acting out

the above complaints were made by Respondents with malice and without probable cause for the ulterior purpose of harassing her and subjecting her to ridicule. Pallares stated Respondents acted in concert to harm her, with a conscious indifference to her rights, and that their ultimate intent was to run her out of the neighborhood.

Based on the foregoing, Pallares asserted claims for (1) malicious prosecution, (2) abuse of process, (3) invasion of privacy, (4) intentional infliction of emotional distress, and (5) civil conspiracy. Respondents filed answers denying the allegations. Respondent Maseng also counterclaimed, seeking an order requiring the abatement of a nuisance and damages based on Pallares's alleged failure to properly maintain her property.

Respondents moved for summary judgment as to all claims. The circuit court granted partial summary judgment to Respondents on the claims for malicious prosecution, abuse of process, and civil conspiracy, and denied summary judgment on the remaining claims for invasion of privacy and intentional infliction of emotional distress. Pallares appealed to the Court of Appeals, and this Court certified the case for review pursuant to Rule 204(b), SCACR.

## II. STANDARD OF REVIEW

Rule 56(c) of the South Carolina Rules of Civil Procedure provides a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In determining whether any triable issues of fact exist, the trial court must view the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to the party opposing summary judgment. *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 534 S.E.2d 688 (2000). "An appellate court reviews the granting of summary

---

of malice. Respondents described multiple occasions on which Pallares allegedly followed them, photographed them, and stared and/or glared at them.

judgment under the same standard applied by the trial court pursuant to Rule 56, SCRCP." *Id.* at 379, 534 S.E.2d at 692.

## III. LAW/ANALYSIS

On appeal, Pallares challenges the circuit court's grant of summary judgment to Respondents on her claims for (1) malicious prosecution and (2) abuse of process.[3]

### A. Malicious Prosecution

Pallares first contends the circuit court erred in granting summary judgment to Respondents on her claim for malicious prosecution. We disagree.

■■ "[T]o maintain an action for malicious prosecution, a plaintiff must establish: (1) the institution or continuation of original judicial proceedings;[4] (2) by or at the instance of the defendant; (3) termination of such proceedings in [the] plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage." *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 435, 629 S.E.2d 642, 648 (2006) (first alteration in original) (citations omitted). "An action for malicious prosecution fails if the plaintiff cannot prove each of the required elements by a preponderance of the evidence, including malice and lack of probable cause." *Id.*

■■ "Malice is defined as 'the deliberate[,] intentional doing of an act without just cause or excuse.' " *Id.* at 437, 629 S.E.2d at 649 (quoting *Eaves v. Broad River Elec. Coop., Inc.*, 277 S.C. 475, 479, 289 S.E.2d 414, 416 (1982)). "Malice does not necessarily mean a defendant acted out of spite, revenge, or with a malignant disposition, although such an attitude certainly may indicate malice." *Id.* "In an action for malicious prosecution, malice may be inferred from a lack of probable cause to institute the prosecution." *Id.*

---

3. Pallares does not challenge the court's ruling on the civil conspiracy claim.

4. The "original judicial proceedings" can be civil or criminal. *See generally Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 629 S.E.2d 642 (2006); *Broyhill v. Resolution Mgmt. Consultants, Inc.*, 401 S.C. 466, 736 S.E.2d 867 (Ct.App.2012).

■ "Probable cause in this context does not turn upon the plaintiff's guilt or innocence, but rather upon whether the facts within the prosecutor's knowledge would lead a reasonable person to believe the plaintiff was guilty of the crimes charged." *Kinton v. Mobile Home Indus., Inc.*, 274 S.C. 179, 181, 262 S.E.2d 727, 728 (1980).

■ Where a plaintiff bases the claim on an opponent's institution of civil causes of action, probable cause exists if the facts and circumstances would lead a person of ordinary intelligence to believe that the plaintiff committed one or more of the acts alleged in the opponent's complaint. *Broyhill v. Resolution Mgmt. Consultants, Inc.*, 401 S.C. 466, 475, 736 S.E.2d 867, 871–72 (Ct.App.2012). The issue is not what the actual facts were, but what the prosecuting party honestly believed them to be. *Eaves*, 277 S.C. at 478, 289 S.E.2d at 416 (citation omitted).

■ A party must show the opponent lacked probable cause as to each cause of action asserted to prevail on a claim of malicious prosecution; thus, the existence of probable cause as to any one is sufficient to defeat a malicious prosecution claim. *Broyhill*, 401 S.C. at 475, 736 S.E.2d at 871–72. Whether probable cause exists is ordinarily a jury question, but it may be decided as a matter of law when the evidence yields only one conclusion. *Law*, 368 S.C. at 436, 629 S.E.2d at 649 (citing *Parrott v. Plowden Motor Co.*, 246 S.C. 318, 323, 143 S.E.2d 607, 609 (1965)).

■ In granting summary judgment, the circuit court focused on the element of probable cause, stating Pallares "has failed to allege any material facts that would suggest that Seinar and Maseng did not honestly believe they had probable cause to lodge their complaints." The court stated the record showed that Seinar complained to Animal Control/Columbia Police on three separate occasions that Pallares's dogs were barking excessively, and the incident reports from those complaints set forth information detailing the existence of probable cause on each complaint. The court noted that the Municipal Code of the City of Columbia, SC § 4–70 provides an animal constitutes a nuisance if it is allowed to bark in an excessive, continuous, or untimely manner that results in a

serious annoyance or an interference with the reasonable use and enjoyment of neighboring premises.

The court further stated it was undisputed that Respondents had made complaints with the City of Columbia for housing and code violations occurring on Pallares's property. The court found the City first served Pallares with warning notices of these violations, and the violations were thereafter remedied by Pallares. The court determined the service of warnings to Pallares affirmed the fact that Respondents had probable cause to initiate their complaints. Furthermore, the decision whether to enforce the code violations was made by the City, not by Respondents. The court concluded summary judgment in favor of Respondents was appropriate on the claim for malicious prosecution "because Seinar and Maseng had probable cause" to make their complaints against Pallares.

We find the record supports the circuit court's decision to grant summary judgment to Respondents on Pallares's claim for malicious prosecution because the only evidence in the record demonstrates there was probable cause to support one or more of the complaints lodged by Respondents, which defeats Pallares's claim for malicious prosecution as a matter of law.

The record contains an incident report on or about January 4, 2005 documenting a complaint by Seinar about dogs barking at Pallares's residence: "Complainant reports that a[n] animal (dog) was continuously barking at the rear of the above Incident Location for hours. Upon arrival Reporting Officer observed a dog at Incident Location constantly barking causing [a] disturbance in the neighborhood."

An incident report from April 5, 2005 demonstrates an officer again found the dogs barking at Pallares's residence: "Complainant [Seinar] states that the subject has two dogs that bark constantly and are a nuisance to the neighborhood. Complainant states that this is an ongoing problem." The officer commented in a supplemental report that he observed an extended period of barking during his visit: "While reporting officer was talking to the subject, the dog was heard barking for almost the entire time. (Thirty mins. to an hour[.] )"

Lastly, an incident report from on or around August 2, 2006 records Seinar's complaint about the dogs barking during the night: "Complainant states that the dogs at 407 S. Ravenel St. were barking uncontrol[l]ably all night long keeping her awake. Animal Control was called by Complainant several times. Responding Officer was at the listed location for 15 minutes and heard the dogs barking and keeping up the neighborhood. Responding Officer advised Complainant to sign a warrant on the subject."

Seinar did sign warrants at the officer's suggestion.[5] Although Pallares challenges these warrants, we find their manner of execution and the fact that they were not prosecuted does not negate the fact that there was probable cause to support Seinar's animal nuisance complaints, as documented in the officers' reports.

The record also supports the circuit court's conclusion that the only evidence presented showed there was probable cause for one or more of the code complaints. The City Inspections Department issued Pallares a Warning/Notice of Violation on June 17, 2004 for violation of a City ordinance requiring owners to keep their property properly cut and cleared of trash, debris, weeds, etc. Pallares was directed to remove miscellaneous items, materials, and debris from her premises. The City issued Pallares a Uniform Ordinance Summons, No. 7577, ordering her to appear for trial in the City of Columbia Municipal Court for this violation. The City Inspections Department issued another Warning/Notice of Violation to Pallares on January 26, 2005 for failing to keep the premises properly cut and cleared, and she was directed to remove all discarded items from her driveway. On April 5, 2005, the Property Maintenance Code Official issued a Notice of Complaint upon finding, after an investigation, that Pallares had property (a shed) that violated a City code provision governing property maintenance.

Pallares contends "the city administrator [has] pointed out that several of the complaints were groundless and did not

---

5. On August 4, 2006, Seinar signed two separate warrants for the 2005 incidents, but neglected to include the most recent incident from 2006, so the prosecutor declined to prosecute the warrants "at that time" because they were signed more than one year after the allegations described therein.

amount to code violations," citing to an email dated April 27, 2006 from Marc Mylott. The e-mail does not support Pallares's suggestion that there was no probable cause for the code complaints because some of them were found to be "groundless." To the contrary, Mylott indicates that Pallares had abated a violation regarding bricks in the right of way, and that the City had not prosecuted the 2004 violation for which Pallares was issued Uniform Ordinance Summons No. 7577 because previously code enforcement inspectors had the discretion whether to proceed to a trial if "a property owner abated the violation(s) just prior to court." Thus, the fact that the City did not proceed to trial on a documented violation does not obviate the existence of probable cause for the violation. The existence of probable cause as to any of these allegations is sufficient to defeat Pallares's claim for malicious prosecution.

## B. Abuse of Process

Pallares next argues the circuit court erred in granting summary judgment to Respondents on her claim for abuse of process. We agree.

The tort of abuse of process is intended to compensate a party for harm resulting from another party's misuse of the legal system. *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 351 S.C. 65, 74 n. 5, 567 S.E.2d 251, 255 n. 5 (Ct.App.2002). "Process," as used in this context, has been interpreted broadly to include the entire range of procedures incident to the litigation process. *Id.* at 70, 567 S.E.2d at 253.

The essential elements of abuse of process are (1) an ulterior purpose, and (2) a willful act in the use of the process that is not proper in the regular conduct of the proceeding. *Argoe v. Three Rivers Behavioral Ctr. & Psychiatric Solutions*, 388 S.C. 394, 697 S.E.2d 551 (2010); *Hainer v. Am. Med. Int'l, Inc.*, 328 S.C. 128, 492 S.E.2d 103 (1997); *LaMotte v. Punch Line of Columbia, Inc.*, 296 S.C. 66, 370 S.E.2d 711 (1988).

The first element, an "ulterior purpose," exists if the process is used to secure an objective that is "not legiti-

mate in the use of the process." *D.R. Horton, Inc. v. Wescott Land Co.*, 398 S.C. 528, 551, 730 S.E.2d 340, 352 (Ct.App.2012) (citation omitted). An allegation that a party had a "bad motive" or an "ulterior purpose" in bringing an action, standing alone, is insufficient to sustain an abuse of process claim. *Id.* (citing *Food Lion*, 351 S.C. at 74, 567 S.E.2d at 255). Moreover, no action lies where a person has an incidental or concurrent motive of spite or merely seeks to gain a collateral advantage from the process. *Food Lion*, 351 S.C. at 74–75, 567 S.E.2d at 255–56.

However, "[o]ne who uses a legal process, whether criminal or civil, against another *primarily* to accomplish a purpose for which it is not designed, is subject to liability for harm caused by the abuse of process." *Id.* at 75, 567 S.E.2d at 255–56 (quoting Restatement (Second) of Torts § 682 (1977)). The collateral objective must be the "sole or paramount reason for acting." *Id.* at 75, 567 S.E.2d at 256.

The tort centers on events occurring outside the process; the improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or club. *D.R. Horton*, 398 S.C. at 551, 730 S.E.2d at 352 (citations omitted); *see also Hainer*, 328 S.C. at 136, 492 S.E.2d at 107 (stating the improper purpose usually takes the form of coercion to obtain a collateral advantage); *accord Swicegood v. Lott*, 379 S.C. 346, 665 S.E.2d 211 (Ct.App.2008); *Guider v. Churpeyes, Inc.*, 370 S.C. 424, 635 S.E.2d 562 (Ct.App.2006).

The second element, a "willful act," has been described as "[s]ome definite act or threat not authorized by the process or aimed at an object not legitimate in the use of the process[.]" *Hainer*, 328 S.C. at 136, 492 S.E.2d at 107. The "willful act" element consists of three components: (1) "a 'willful' or overt act"; (2) "in the use of the process"; (3) "that is improper because it is either (a) unauthorized or (b) aimed at an illegitimate collateral objective." *Food Lion, Inc.*, 351 S.C. at 71, 567 S.E.2d at 254 (citations omitted).

In granting summary judgment to Respondents on Pallares's claim for abuse of process, the circuit court stated "the

only evidence was that City found probable cause for the complaints in both the animal nuisance and code violations, and that the complaint process initiated by Seinar and Maseng [was] carried to its authorized conclusion." The court further found that, "[e]ven if Seinar and Maseng had an ulterior motive, the Plaintiff has failed to present evidence to suggest that there was a 'willful act' by Seinar and Maseng."

On appeal, Pallares "maintains that [Respondents] were trying to drive her from the neighborhood with various legal actions" and that "[t]his is [ ] a classic example of the abuse of legal process to obtain a collateral advantage-ejection of the plaintiff from her home and her neighborhood." Pallares asserts "[s]he has a witness to corroborate [Respondents'] motive." The record contains a 2008 affidavit Pallares submitted from a neighbor, Christine Overturf. In the affidavit, Overturf states she observed Maseng take photographs of Pallares and that she heard Seinar make derogatory remarks about Pallares's ethnicity and about the fact that she wanted Pallares out of the neighborhood.

Pallares asserts the elements of abuse of process are less stringent than those for malicious prosecution, citing *Huggins v. Winn–Dixie Greenville, Inc.*, 249 S.C. 206, 153 S.E.2d 693 (1967) and its general definition of abuse of process, and she avers there is no required element of actual malice, citing *Swicegood v. Lott*, 379 S.C. 346, 665 S.E.2d 211 (Ct.App.2008).

■ We conclude summary judgment was inappropriate on Pallares's claim for abuse of process because there are genuine issues of material fact regarding the elements of this claim. Even if Respondents had cause to make some complaints against Pallares, the fact that those were properly instituted does not foreclose an action for abuse of process if Respondents have, in fact, committed acts outside the normal process that are improper. *See generally Huggins*, 249 S.C. at 209, 153 S.E.2d at 695 (noting the issuance of the process might be justified in itself, but it is the misuse of the process for an end not lawfully warranted by it that constitutes the tort of abuse of process); *id.* (causing process to issue without justification is an essential element of malicious prosecution, but not for abuse of process).

We find Respondents' act of escalating this "bad neighbor" dispute to the point of seeking the mental commitment of Pallares constitutes evidence of both an ulterior motive and a willful act. The motive was their obvious dislike of Pallares and their alleged desire to drive her from the neighborhood. As for the element of a willful act, Respondents sought the commitment of Pallares when they apparently had no legal authority to do so, as is evidenced on the face of their commitment petition. The form petition signed by Respondents clearly indicates the categories of persons who may seek a mental evaluation for an individual—it is limited by state law to "interested persons," statutorily defined as "a parent, guardian, spouse, adult next of kin, or nearest friend[.]" S.C.Code Ann. § 44–17–510 (2002) (providing procedure for petition to be made by "interested persons"); *id.* § 44–23–10(21) (defining "interested persons"). Respondents listed their relationship to Pallares as "Neighbors" on the form petition, which does not come within any of the permissible categories of persons eligible to petition for commitment under South Carolina law, as Respondents undeniably were not the "nearest friend[s]" of Pallares. Because there is evidence creating a question of material fact and further development of the record is needed, we find summary judgment is premature on the claim for abuse of process.[6] *See Schmidt v.*

---

**6.** To the extent Respondents assert issues regarding the *Noerr–Pennington* doctrine and judicial immunity as additional sustaining grounds under Rule 220(c), SCACR, we find these grounds unavailing. These issues were originally asserted in Respondents' second set of summary judgment motions pertaining to Pallares's remaining claims. We note the *Noerr–Pennington* doctrine arose from two United States Supreme Court cases involving federal antitrust litigation, *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The *Noerr–Pennington* doctrine is based on the First Amendment right to petition the government for grievances, which includes the right of access to the courts, and provides immunity from claims that are based on acts related to this right "unless the act is a mere sham." *Select Comfort Corp. v. Sleep Better Store, L.L.C.*, 838 F.Supp.2d 889, 896 (D.Minn.2012). Its purpose is to protect the legitimate exercise of the constitutional right and to protect against retributive civil claims. *Hometown Props., Inc. v. Fleming*, 680 A.2d 56, 60 (R.I.1996). Although the United States Supreme Court developed the doctrine in the context of antitrust litigation, its potential application in other contexts has been recognized. *Prof'l Real Estate Investors, Inc. v. Columbia*

*Courtney,* 357 S.C. 310, 592 S.E.2d 326 (Ct.App.2003) (holding summary judgment is inappropriate when further development of the facts is desirable to clarify the application of the law or when there is a dispute as to the conclusions and inferences to be drawn from the facts; the purpose of summary judgment is to expedite the disposition of cases which do not require the services of a fact finder).

## IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's grant of partial summary judgment to Respondents on Pallares's claim for malicious prosecution. However, we reverse the grant of summary judgment on Pallares's claim for abuse of process and remand the matter to the circuit court for further proceedings in accordance with this decision.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

PLEICONES and HEARN, JJ., concur. KITTREDGE, J., concurring in a separate opinion. TOAL, C.J., concurring in part and dissenting in part in a separate opinion.

Justice KITTREDGE.

I concur in result. I write separately because I would limit Appellant's abuse of process claim to the mental commitment issue.

Chief Justice TOAL.

I concur in part and dissent in part. While I agree with the majority's decision to affirm the circuit court's grant of summary judgment to Respondents on Pallares's claim for malicious prosecution, I would further affirm the circuit court's

*Pictures Indus., Inc.,* 508 U.S. 49, 59, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993); *Select Comfort Corp.,* 838 F.Supp.2d at 896; *Kellar v. VonHoltum,* 568 N.W.2d 186 (Minn.Ct.App.1997); *Hometown Props., Inc.,* 680 A.2d at 60. While some jurisdictions have adopted the *Noerr–Pennington* doctrine and extended it beyond the antitrust context, South Carolina courts have not previously addressed the doctrine, and we decline to adopt it at this time. In any event, even if we were to adopt the *Noerr–Pennington* doctrine, we would not apply it to completely insulate a defendant from a tort claim for abuse of process.

grant of summary judgment to Respondents on the abuse of process claim.

In concluding that summary judgment was inappropriate on Pallares's claim for abuse of process, the majority finds that Respondents' attempt to seek the mental commitment of Pallares constitutes evidence of both an ulterior motive and a willful act. To the extent that the majority relies on the mental commitment evidence to support the reversal of the circuit court's grant of summary judgment on the abuse of process claim, I disagree for two reasons.

First, in my opinion, the mental commitment issue is not preserved for our review. The circuit court order granting partial summary judgment makes no mention of the attempted mental commitment and Pallares did not make a Rule 59(e) motion to preserve the issue. *See Herron v. Century BMW*, 395 S.C. 461, 465, 719 S.E.2d 640, 642 (2012) (citation omitted) ("At a minimum, issue preservation requires that an issue be raised to and ruled upon by the trial judge."); *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 24, 602 S.E.2d 772, 780 (2004) (stating that if an issue or argument is raised, but not ruled upon by the trial judge, a party may file a Rule 59(e) motion to preserve it for appellate review).

Second, I disagree with the majority's broad assertion that neighbors do not fall within any of the permissible categories of persons eligible to petition for mental commitment. The statute defining "interested person" also defines "nearest friend" as "any responsible person who, in the absence of a parent, guardian, or spouse, undertakes to act for and on behalf of another individual who is incapable of acting for himself for that individual's benefit, whether or not the individual for whose benefit he acts is under legal disability." S.C.Code. Ann. § 44–23–10(14) (2002). Given this definition, I would find that, depending upon the circumstances, a neighbor may well qualify as a "nearest friend," and thus, be eligible to petition for mental commitment. In this case, however, the issue was not raised or litigated.

If the mental commitment issue had been properly preserved, I would consider it the only basis upon which this Court should consider reversing the circuit court's grant of summary judgment with respect to the abuse of process claim.

The majority, on the other hand, upholds the entire abuse of process claim. I would hold that the circuit court was correct in granting Respondents' motion for summary judgment on the abuse of process claim because, as the circuit court stated, the complaint process initiated by Respondents for the animal nuisance and code violations was "carried to its authorized conclusion." *See Hainer v. Am. Med. Int'l, Inc.*, 328 S.C. 128, 136, 492 S.E.2d 103, 107 (1997) ("There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."). Significantly, Pallares was issued citations for these violations, which indicates that Respondents properly utilized the complaint process. Thus, the circuit court did not err in finding an absence of evidence that Respondents committed a willful act. *See LaMotte v. Punch Line of Columbia, Inc.*, 296 S.C. 66, 71, 370 S.E.2d 711, 713–14 (1988) (citation omitted) (holding that appellants had not asserted a cause of action for abuse of process because they did not allege that respondents engaged in "a willful act in the use of the process not proper under regular conduct of the proceedings").

Therefore, because the mental commitment issue is not preserved for our review, and because the animal nuisance and code violations do not support the abuse of process claim, I would affirm the circuit court's grant of summary judgment on Pallares's claims for both malicious prosecution and abuse of process.