**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

───────────

**No. 19-6843**

───────────

FRED R. HALCOMB, JR.,

       Plaintiff - Appellee,

   v.

ICC CHAIRPERSON TAMARRA RAVENELL,

       Defendant - Appellant.

───────────

Appeal from the United States District Court for the District of South Carolina, at Anderson.  J. Michelle Childs, District Judge.  (8:17-cv-01410-JMC)

───────────

Argued:  December 10, 2020                Decided:  March 30, 2021

───────────

Before MOTZ, THACKER, and QUATTLEBAUM, Circuit Judges.

───────────

Reversed and remanded by published opinion.  Judge Thacker wrote the opinion, in which Judge Motz and Judge Quattlebaum joined.

───────────

J.W. Nelson Chandler, CHANDLER & DUDGEON LLC, Charleston, South Carolina, for Appellant.  Cory Bradley Patterson, HAYNSWORTH SINKLER & BOYD, PA, Greenville, South Carolina, for Appellee.

───────────

THACKER, Circuit Judge:

Tamarra Ravenell ("Appellant") appeals the district court's denial of her summary judgment motion based on a qualified immunity defense to a Section 1983 claim for damages asserted by Fred Halcomb ("Appellee"). Appellee is serving a life sentence and sued Appellant, alleging that she violated his right to due process by failing to provide advance notice of a security detention hearing that led to more restrictive confinement. We assume without deciding that a due process violation occurred and conclude that, even so, the law was not clearly established on that point.

Therefore, we hold Appellant was entitled to qualified immunity and reverse the decision of the district court.

I.

A.

Appellee was serving a life sentence at Lieber Correctional Institution in South Carolina when a March 23, 2016 search of his cell revealed contraband, including drugs, weapons, and escape tools. In connection with this incident, Appellee received two weeks' advance notice of an adversarial disciplinary hearing occurring on April 14, 2016, at which Appellee was ultimately determined guilty of a drug charge and possession of a weapon and escape tools. As a result, Appellee was transferred from short term detention status to disciplinary detention status. Four days later, on April 18, 2016, the Institutional Classification Committee ("ICC"), which included Appellant, conducted a security detention hearing. Per Appellant, the purpose of the security detention hearing was not to relitigate the offenses of which Appellee was already determined guilty by the disciplinary

2

hearing, but to "review[] the classification of inmates on disciplinary detention to determine whether they should be transferred to security detention."  J.A. 312.[*]  Appellee did not receive notice of the time of the hearing or its purpose until he arrived at the hearing. After reviewing Appellee's institutional record, the ICC recommended that Appellee be placed in security detention.  The recommendation was adopted by a senior inmate classification official.

## B.

The April 18 security detention hearing is the basis of Appellee's Section 1983 complaint against Appellant.  In the complaint, Appellee alleged that his right to due process was violated because he did not receive notice of the security detention hearing prior to arriving at the hearing.  Appellee claimed that if he had received advance notice of the hearing, he would have presented evidence that the contraband found in his cell was not his, inasmuch as his cellmate claimed ownership of the contraband.  In her answer to Appellee's complaint, Appellant asserted a qualified immunity defense and moved for summary judgment.

Analyzing whether Appellant violated a clearly established right, the district court defined the right at issue as the right to fair notice of the security detention hearing. Appellant argued that the right should be defined as the right to 48 hours' notice because that is how the complaint defined the right, but the district court disagreed.  The district court reasoned that as a pro se litigant, Appellee was entitled to a liberal construction of

---

[*] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

the pleadings. The district court further explained that Appellee likely narrowly defined the right as 48 hours' notice because the South Carolina Department of Corrections policies describe an entitlement to 48 hours' notice in certain circumstances. Thus, liberally construing the pleading, the district court defined the right as "*fair notice* (before [a Security Detention] Board hearing)." J.A. 404 (emphasis in original). Then, the court determined that the right was clearly established but not afforded to Appellee. Accordingly, it denied Appellant's motion for summary judgment based on qualified immunity.

## II.

A denial of summary judgment based on qualified immunity presents a narrow exception to the general rule that we cannot review a denial of summary judgment in an interlocutory appeal. *See Williams v. Strickland*, 917 F.3d 763, 767–68 (4th Cir. 2019). "A district court's denial of summary judgment on the basis of qualified immunity is a collateral order and therefore subject to immediate appellate review, despite being interlocutory." *Id.* at 768. Further, "A district court's denial of qualified immunity on summary judgment is reviewed de novo, applying the same legal standards as the district court did on summary judgment." *Yates v. Terry*, 817 F.3d 877, 883 (4th Cir. 2016).

## III.

Determining whether an official is entitled to qualified immunity "typically involves two inquiries: (1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 898 (4th Cir.

4

2016) (internal quotation marks omitted). "The court may address these two questions in the order that will best facilitate the fair and efficient disposition of each case." *Id.* (internal quotation marks and alterations omitted). If the answer to either question is no, then the official is entitled to qualified immunity. *See id.*

Here, we conclude that even assuming a violation of Appellee's due process rights, Appellant is entitled to qualified immunity because the right at issue was not clearly established at the time of the alleged violation.

A.

Defining the Right

The first step in determining whether a constitutional right is clearly established requires "defin[ing] the precise right into which we are inquiring." *Armstrong*, 810 F.3d at 907. Courts must not define clearly established law at a high level of generality "[b]ecause 'the dispositive question is whether the violative nature of *particular* conduct is clearly established.'" *Id.* (emphasis in original) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). However, a "general constitutional rule may apply with obvious clarity even though the very action in question has not previously been held unlawful." *Thompson v. Virginia*, 878 F.3d 89, 98 (4th Cir. 2017) (alterations and internal quotation marks omitted). After defining the right, we ask whether the law "is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Armstrong*, 810 F.3d at 907 (internal quotation marks omitted).

We agree with the district court that the right is appropriately framed as the right to *fair* notice of a security detention hearing, rather than a specific right to 48 hours' notice.

5

It is true that the right to fair notice is somewhat general, but it is also true that the right to fair notice is a specific subset within the more general right to due process. *See Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it." (internal quotation marks omitted)). Further, whether a right to fair notice was violated fits neatly into an inquiry into whether the "general constitutional rule" applied with such obvious clarity that Appellant was "still on notice that [her] conduct violate[d] established law even in novel factual circumstances." *Thompson*, 878 F.3d at 98 (internal quotation marks omitted). By contrast, defining the right narrowly as 48 hours' notice conflicts with an analysis based on general constitutional principles because the very nature of due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Finally, the district court had an obligation to liberally construe the complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed." (internal quotation marks omitted)). It is true that Appellant's complaint defined the right at issue in narrow terms of 48 hours' notice, but as the district court noted, that was arguably because the South Carolina Department of Corrections policies describe an entitlement to 48 hours' notice in certain circumstances. And more importantly, the crux of Appellant's complaint argued that the lack of prior notice deprived him of an opportunity to prepare for the hearing. In other words, Appellant complained that he did not receive *fair* notice of the hearing.

6

However, we disagree with the district court's conclusion that the contours of the right to fair notice in this context are so clearly established that a reasonable official would have known that Appellee had the right to be notified prior to his security detention hearing.

B.

Was the Right to Fair Notice Sufficiently Clear?

Having defined the right at issue as the right to fair notice of a security detention hearing, we turn to the law surrounding Appellee's claimed right to fair notice to determine whether this right was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Armstrong*, 810 F.3d at 907 (internal quotation marks omitted).

The minimal procedural protections required in a given situation "depends on a balancing of interests, consistent with the test identified by the Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Williamson v. Stirling*, 912 F.3d 154, 177 (4th Cir. 2018). "Pursuant to the *Mathews* principles, a reviewing court must weigh the private interests impacted by an official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional safeguards; plus the Government's opposing interests." *Id.* (internal quotation marks omitted).

The parties agree that Appellee's confinement resulting from the security detention hearing is accurately characterized as administrative segregation. In *Hewitt v. Helms*, the Supreme Court applied the *Mathews* test to determine whether the process received by an inmate prior to being placed in administrative segregation was adequate. 459 U.S. 460, 475–76 (1983). The Court emphasized the minimal process that is required in such

7

circumstances when it held "an informal, nonadversary evidentiary review" was sufficient to support a "decision to confine an inmate to administrative segregation." *Id.* Importantly, the Court further noted, "An inmate must merely receive *some* notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Id.* (emphasis supplied).

The Court revisited the due process issue in the administrative segregation context in *Wilkinson v. Austin*, 545 U.S. 209 (2005). There, the Court held a policy that provided inmates with notice at least 48 hours before an administrative segregation hearing passed constitutional muster. *See id.* at 216, 228. Importantly, however, the Court did not hold that 48 hours' notice prior to the hearing was constitutionally required.

This court analyzed a procedural due process challenge in the administrative segregation context in *Incumaa v. Stirling* but expressly did "not decide whether prison review mechanisms must be as extensive as in *Wilkinson* in order to pass constitutional muster." 791 F.3d 517, 535 (4th Cir. 2015). Instead, we concluded a triable dispute on a procedural due process claim existed where the administrative segregation policies (1) had only a single layer of confinement review; (2) required no factual basis be furnished for decisions; and (3) afforded prisoners no right to contest the factual basis for decisions. *See id.* at 534–35. Thus, *Incumaa*, like *Wilkinson*, did not decide whether prior notice of an administrative segregation hearing is constitutionally required. However, we later explained, "the *Incumaa* decision gave clear notice to jail officials in 2015 that a long-term detention in solitary confinement—even when imposed for security reasons—justifies *some* level of procedural protection." *Williamson*, 912 F.3d at 189 (emphasis supplied).

8

The district court relied on the quoted *Williamson* language when it concluded the right to fair notice was clearly established in this case. But the *Williamson* decision was two years after Appellee's security detention hearing. Moreover, the district court's conclusion that Appellant denying Appellee prior notice of his hearing clearly violated Appellee's right to fair notice does not directly follow from the fact that *Incumaa* provided jail officials clear notice that inmates are entitled to "some level of procedural protection" when being placed in administrative segregation. *Williamson*, 912 F.3d at 189. In order for the law to be clearly established in the context of the case at hand, it must be clear to a reasonable official that the Constitution requires inmates to receive prior notice of an administrative segregation hearing. *See Armstrong*, 810 F.3d at 907. While it is clear from *Hewitt*, *Wilkinson*, and *Incumaa* that inmates are entitled to *some* level of procedural protection, none of those cases definitively require prior notice of administrative segregation hearings. Indeed, in *Incumaa*, we explicitly did not decide whether the prison review mechanisms analyzed in *Wilkinson*, including the 48 hour notice policy, were required in order to pass constitutional muster. *See* 791 F.3d at 535. Thus, we cannot conclude that the case law is so clearly established that a reasonable official would know whether prior notice of an administrative segregation hearing is required.

Appellant argues the Supreme Court's repeated emphasis on the informal nature of administrative segregation hearings alongside the minimal procedural requirements for such hearings means the Constitution does not require notice prior to a hearing. In Appellant's view, the notice required by *Mathews* is satisfied if inmates simply receive information at some point as to why a change in security status is being recommended as

9

well as an opportunity to respond. Appellee counters with a cogent discussion of the possibility of an erroneous deprivation of rights if prior notice is not provided as well as the minimal burden a prior notice requirement would place on prisons. We need not decide which merits argument wins the day on this point. Instead, we conclude only that Appellee's right to fair notice of a security detention hearing was not "clearly established at the time of the alleged violation"; that is, it was not "sufficiently clear that every reasonable official would have understood that [failing to provide prior notice of a security detention hearing] violates [the right to fair notice]." *Armstrong*, 810 F.3d at 907 (internal quotation marks omitted).

IV.

For the foregoing reasons, we reverse the district court's ruling on Appellant's motion for summary judgment and remand with instructions to enter an order granting the motion.

*REVERSED AND REMANDED*