**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-1001

CALVIN HOAGLAND, Skip,

        Plaintiff - Appellant,

v.

DAVID BENNETT, Individually and as Mayor of the Town of Hilton Head Island;
BILL HARKINS, Individually and as a Member of the Town of Hilton Head Island
Council and as Mayor Pro Tem of the Town of Hilton Head Island; KIM LIKINS,
Individually and as a Member of the Town of Hilton Head Island Council; LEE
EDWARDS, Individually and as a Member of the Town of Hilton Head Island
Council; JOHN MCCANN, Individually and as a Member of the Town of Hilton
Head Island Council; TOM LENNOX, Individually and as a Member of the Town
of Hilton Head Island Council; MARC GRANT, Individually and as a Member of
the Town of Hilton Head Island Council,

        Defendants - Appellees,

and

STEVE RILEY, Individually and as Town of Hilton Head Island Manager; BRIAN
HULBERT, Individually and as Town of Hilton Head Island Attorney,

        Defendants.

Appeal from the United States District Court for the District of South Carolina, at Beaufort.
Richard M. Gergel, District Judge. (9:17−cv−01374−RMG)

Argued: September 19, 2023                Decided: November 1, 2023

Before HARRIS and QUATTLEBAUM, Circuit Judges, and KEENAN, Senior Circuit Judge.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** Taylor Meriwether Smith, IV, HARRISON & RADEKER, PA, Columbia, South Carolina, for Appellant. Hugh W. Buyck, BUYCK LAW FIRM, LLC, Mount Pleasant, South Carolina, for Appellees. **ON BRIEF:** Barrett R. Brewer, BREWER LAW FIRM, LLC, Mount Pleasant, South Carolina, for Appellant.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Calvin "Skip" Hoagland appeals the district court's order granting summary judgment to Defendants—members of Hilton Head Island's Town Council—on Hoagland's 42 U.S.C. § 1983 and state law abuse of process claims. Because the Council members are entitled to qualified immunity on Hoagland's § 1983 claim and because Hoagland failed to put forward evidence sufficient to create a genuine dispute of material fact as to whether the Council members are liable under Hoagland's abuse of process claim, we affirm the district court's order.

I.

Hoagland is a resident of Florida and operates Beaufortwatchdog.org, which he alleges is dedicated to advancing transparency and exposing corruption in government. David Bennett, Bill Harkins, Kim Likins, Lee Edwards, John McCann, Tom Lennox and Marc Grant were, at all relevant times, Hilton Head Island Town Council members. Around July 2015, Hoagland began to lobby the Council members to vote against a contract recognizing the Hilton Head-Bluffton Chamber of Commerce as Hilton Head's designated marketing organization. Hoagland also sought to have the Council require a forensic audit of the Chamber. After Likins declined to meet with Hoagland about his advocacy, Hoagland emailed her employer—the Boys and Girls Club—threatening to have her "publicly disgraced to all in this community" and "booted off town council and removed from the Boys and Girls club for violating the public trust" if she voted against an audit. J.A. 141. According to Hoagland's email, anyone voting against an audit was "corrupted

3

or totally incompetent." J.A. 141. In another email, Hoagland stated that Likins "need[ed] to set a better example for Boys and Girls or perhaps [she] need[ed] to be replaced from that job as well." J.A. 143.

After Likins voted to approve the contract with the Chamber of Commerce, Hoagland called the Boys and Girls Club's Board President, demanding Likins be fired "because she was a liar and was unfit to be around children." J.A. 102. Hoagland also called another Boys and Girls Club employee to relay that Likins was "very, very dangerous" and that the Club "need[ed] to fire her right now." J.A. 192. In an email to many recipients, Hoagland spoke directly to Likins, stating that she lied and was not fit to serve on the Town Council and was "not fit to serve boys and girls [as] well." J.A. 208. Hoagland also began running advertisements in local papers to publicly disgrace Likins and other Council members. And on December 3, 2015, Hoagland emailed Likins and another person, stating "[w]e do not need a [sic] anyone who lies and has conflict leading our boys and girls club or serving on town council. Kim I expect two things you either resign or are terminated. I can assure you one of the two will happen." J.A. 224.

On December 10, 2015, Likins sued Hoagland in state court, alleging intentional infliction of emotional distress, defamation, intrusion into private affairs and interference with her employment. The complaint alleged that Hoagland had "engaged in an extended course of attacking and maligning Town Council and, in particular [Likins]" through "a persistent campaign of verbally abusing, defaming, and threatening [Likins] and taking other action to harm [her]." J.A. 197–98.

4

Five days later, on December 15, 2015, Hoagland appeared at a Town Council meeting and addressed the Council members. At the beginning of Hoagland's remarks, Bennett interrupted him for roughly eleven seconds to ask him to refrain from personal attacks and discussions about pending litigation. Undeterred, Hoagland completed his prepared remarks, which lasted roughly three minutes.

After Hoagland completed his comments, Bennett noted "that his understanding of Town Code is that only citizens of Hilton Head Island can approach and discuss a matter with Council and since Mr. Hoagland is not a citizen of the Island, and until such time that a majority of Council overturns his decision, Mr. Hoagland will not be invited or allowed back to speak before Council." J.A. 236. At the end of the December 15 meeting, the Town Council went into executive session and considered "a resolution authorizing the retention and payment for personal counsel to protect council members through appropriate legal process from improper and/or unlawful harassment by third parties." J.A. 239. With Likins recusing herself from the vote due to a conflict of interest, the motion was approved.

At the next Town Council meeting in January 2016, Hoagland once again appeared and attempted to speak. After a recess, the Council members voted to allow Hoagland to speak, and he completed his remarks in full.

Later, Hoagland filed the operative amended complaint in federal court following removal from state court by the Council members. Hoagland asserted causes of actions for abuse of process, malicious prosecution, civil conspiracy, a First Amendment claim brought under 42 U.S.C. § 1983, as well as requests for declaratory judgment and injunctive relief from the Council members' support and funding of the *Likins* litigation.

5

Following discovery, the Council members moved to dismiss or, in the alternative, for summary judgment, in part, on qualified immunity grounds. The district court granted the Council members' motion for summary judgment on all of Hoagland's claims. The court granted summary judgment on Hoagland's § 1983 claim because the "evidence d[id] not reflect that [Hoagland's] constitutional right to free speech was violated," which "supports finding [the Council members] have qualified immunity." J.A. 491. In making that determination, the court found that the record demonstrated that "[Hoagland] presented his comments in full" at both meetings. It also reasoned that "the *Likins* lawsuit was not initiated to chill [Hoagland's] speech, but rather in response to [Hoagland's] threats to publicly disgrace Likins." J.A. 490. The district court also granted summary judgment on Hoagland's state law abuse of process claim concluding that "[a] reasonable fact finder would not conclude from the record that the *Likins* lawsuit was initiated and funded under the council indemnity Resolution for a legally improper purpose, such as to chill [Hoagland's] free speech." J.A. 491.[1]

After the district court denied Hoagland's motion for reconsideration, this appeal followed.

---

[1] The district court also dismissed the claims not at issue in this appeal. First, it dismissed Hoagland's malicious prosecution and civil conspiracy claims because Hoagland failed to point to evidence supporting critical elements of the causes of action. Second, the court denied Hoagland's request for declaratory and injunctive relief because a reasonable fact finder "would not conclude . . . that [the Council members'] alleged conduct is unlawful." J.A 492–93.

II.

We review a district court's grant of summary judgment de novo. *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020). We apply the same legal standards as the district court, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Id.*

A.

Hoagland first contends that the district court erred in granting summary judgment on his § 1983 claim for violating his free speech rights. Hoagland argues that the district court failed to properly analyze the Council members' actions as retaliation.[2] Hoagland points to two allegedly retaliatory acts: (1) the interruption and initial prevention of Hoagland's speech at the December 15, 2015, and January 19, 2016, Town Council meetings and (2) the filing and funding of the *Likins* litigation. The Council members respond that Hoagland was permitted to complete his remarks to the Town Council at both meetings and that any comments from the Council members about the remarks and delays in his presentation were both de minimis and the result of reasonable time, place and manner regulations. The Council members further argue that the *Likins* litigation was not intended to chill protected speech but to prevent harassment and defamation from

---

[2] To show a violation of the First Amendment under a retaliation theory, Hoagland must establish three things: (1) that he "engaged in protected First Amendment activity," (2) that the Council members "took some action that adversely affected [his] First Amendment rights," and (3) that "there was a causal relationship between [his] protected activity and the [Council members'] conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

Hoagland. Also, they argue they were entitled to summary judgment on the First Amendment claims based on the doctrine of qualified immunity.

Beginning with qualified immunity, that doctrine "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Martin v. Duffy*, 858 F.3d 239, 251 (4th Cir. 2017) (internal quotations omitted).[3] To determine whether qualified immunity shields the Council members, we must consider whether (1) the facts "make out a violation of a constitutional right" and (2) whether that right was "clearly established at the time of the defendant's alleged misconduct." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 238 (4th Cir. 2021). We may "skip ahead to the question whether the law clearly established that the [Council members'] conduct was unlawful in the circumstances of the case." *Brown v. Elliott*, 876 F.3d 637, 641 (4th Cir. 2017) (internal quotations omitted).

Hoagland submits that "[c]ourts have found that the rights established by the First Amendment with regard to retaliatory action are well-established rights, of which a reasonable person would and should know." Op. Br. 24 (emphasis omitted). But for

---

[3] We recognize Hoagland initially sought declaratory and injunctive relief in addition to monetary damages. However, Likins apparently withdrew all causes of action except for a permanent injunction against Hoagland, which the trial court denied, effectively ending the *Likins* litigation. *See Likins v. Hoagland*, Op. No. 2015-CP-07-2937 (Beaufort County, Common Pleas filed Aug. 4, 2020) (unpublished order). The appellate court affirmed that resolution. *Likins v. Hoagland*, Op. No. 2020-001126, 2023 WL 4927392 (S.C. Ct. App. filed Aug. 2, 2023). So any injunctive relief related to the *Likins* litigation is moot. Moreover, Hoagland did not discuss declaratory or injunctive relief on appeal.

purposes of qualified immunity, we "must not define clearly established law at a high level of generality" because "the dispositive question is whether the violative nature of *particular conduct* is clearly established." *Halcomb v. Ravenell*, 992 F.3d 316, 319–20 (4th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). Hoagland's argument involves the "high level of generality" that we and the Supreme Court have repeatedly said is improper. *Halcomb*, 992 F.3d at 320; *see District of Columbia v. Wesby*, 583 U.S. 48, 63–64 (2018) (defining the right at a high level of generality "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced"); *White v. Pauly*, 580 U.S. 73, 79 (2017) (explaining that without referencing the particular facts of the case, "plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract facts") (cleaned up).

We are aware of no authority clearly establishing that the Council members' conduct that Hoagland complains to be retaliatory violates his First Amendment rights. In fact, Hoagland's counsel conceded at oral argument that no cases support a clearly established right in this specific context.

In his briefs, Hoagland cites only three cases: *Tindal v. Montgomery County Commission*, 32 F.3d 1535 (11th Cir. 1994), *McCloud v. Testa*, 97 F.3d 1536 (6th Cir. 1997) and *Hunter v. Town of Mocksville*, 789 F.3d 389 (4th Cir. 2015). But none of these cases involve momentary delays or interruptions at public meetings or filing and funding litigation seeking to stop defamation and harassment. In particular, Hoagland's only within-circuit citation, *Hunter v. Town of Mocksville*, involved three lower-ranking police

9

officers who were fired allegedly in response to concerns they raised about the behavior of the town's police chief. *Id.* at 394–95. That case would not have put the Council members on notice that their conduct here violated Hoagland's First Amendment rights.

Hoagland's two out-of-circuit citations fare no better. It is true that even with no controlling authority, we may look to a "'consensus of cases of persuasive authority' from other jurisdictions, if such exists." *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). But the two cases he cites, neither of which involves facts similar to those at issue here, cannot create the consensus we require for a right to be clearly established.

Because the law does not clearly establish that Council members' conduct violated Hoagland's asserted First Amendment rights, the Council members are entitled to qualified immunity on Hoagland's § 1983 claim.

### B.

Hoagland next contends that the district court erred by granting summary judgment to the Council members on his state law abuse of process claim. A South Carolina abuse of process claim arises out of a "party's misuse of the legal system." *Pallares v. Seinar*, 756 S.E.2d 128, 133 (S.C. 2014). The two elements of an abuse of process claim are (1) "an ulterior purpose" and (2) "a willful act in the use of the process that is not proper in the regular conduct of the proceeding." *Id.* An ulterior purpose exists if the improper motivation is the "sole or paramount reason for acting." *Id.* at 134 (citation omitted). Only a defendant who uses a legal process against another "*primarily* to accomplish a purpose for which it is not designed, is subject to liability for harm caused by abuse of process." *Id.*

10

at 133–34 (emphasis in original). A willful act does not exist when a defendant "carr[ies] out the process to its authorized conclusion, even though with bad intentions." *Hainer v. Am. Med. Int'l, Inc.*, 492 S.E.2d 103, 107 (S.C. 1997). Upon review of the record and the parties' arguments, we agree with the district court that Hoagland has not pointed to evidence that creates a genuine dispute of material fact as to the "ulterior purpose" or "willful act" necessary to support an abuse of process claim. Therefore, we affirm the district court's grant of summary judgment to the Council members on this claim.

### III.

The Council members are entitled to qualified immunity from Hoagland's retaliation claim. The Council members did not violate Hoagland's clearly established rights to be free from retaliation in the forms of momentary interruptions and delays of his speech at public meetings or of filing and funding a lawsuit seeking to prevent defamation and harassment. Additionally, Hoagland failed to put forward sufficient evidence to show that the Council members are liable under an abuse of process claim. Accordingly, the district court's order granting summary judgment to the Council members is

*AFFIRMED*.