**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 25-1318**

———————

BRITTANY RUFFIN, individually, and as Personal Representative for the Estate of J.R.,

　　　　　　　Plaintiff – Appellee,

　　　v.

KEVIN DAVIS,

　　　　　　　Defendant – Appellant,

　　　and

WILLIAM HOLBROOK, individually; CITY OF COLUMBIA POLICE DEPARTMENT; CITY OF COLUMBIA,

　　　　　　　Defendants.

———————

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Sherri A. Lydon, District Judge.  (3:23−cv−01425−SAL)

———————

Argued:  January 28, 2026　　　　　　　　　　Decided:  April 29, 2026

———————

Before DIAZ, Chief Judge, and THACKER and BERNER, Circuit Judges.

———————

Affirmed by published opinion.  Chief Judge Diaz wrote the opinion, in which Judge Thacker and Judge Berner joined.

———————

**ARGUED:** John S. Nichols, BLUESTEIN THOMPSON SULLIVAN, LLC, Columbia, South Carolina, for Appellant. Mary H. Schnoor, MCDERMOTT WILL & SCHULTE, Washington, D.C., for Appellee. **ON BRIEF:** Mary Daniel LaFave, LAFAVE BAGLEY, LLC, Columbia, South Carolina, for Appellant. Justin T. Bamberg, Adam C. Ness, BAMBERG LEGAL, LLC, Bamberg, South Carolina; Paul W. Hughes, MCDERMOTT WILL & SCHULTE LLP, Washington, D.C., for Appellee.

—————————

DIAZ, Chief Judge:

This case arises from the fatal police shooting of a teenager. Officer Kevin Davis was patrolling a neighborhood under curfew due to the COVID-19 pandemic when he encountered J.R., a high school senior, on the sidewalk. As Davis approached, J.R. took off running. Davis followed.

The chase turned deadly when J.R. ignored several commands and Davis noticed that he was armed. Davis fired his weapon at J.R. multiple times, ultimately hitting him in the forehead and killing him.

Plaintiff, J.R.'s mother, sued Davis under 42 U.S.C. § 1983. Relevant here, she alleges that Davis's use of deadly force violated J.R.'s Fourth Amendment rights. Davis asserted that he was entitled to qualified immunity. But the district court disagreed.

We conclude that it was clearly established at the time of the shooting that a police officer couldn't use deadly force against a fleeing suspect, even an armed one, who didn't make a furtive or threatening movement with his weapon. So, we affirm the district court's judgment.

I.

We recount the facts in the light most favorable to the plaintiff. *Hensley ex rel. N.C. v. Price*, 876 F.3d 573, 577 (4th Cir. 2017).

A.

In April 2020, South Carolina placed its residents under a stay at home and curfew order due to COVID-19. One evening during the lockdown, City of Columbia police

3

officer Kevin Davis responded to a report about teenagers riding bikes and looking into cars in a residential area.

When Davis arrived at the neighborhood, he noticed J.R. walking alone down the sidewalk, with no bike in sight. Davis later claimed that he saw J.R. step behind a house and reappear with a bag, although plaintiff says J.R. had the bag (a gift from his mother) the entire time. When Davis approached J.R., he took off running.

Body-worn camera footage captured the chase, which lasted about forty-two seconds. Video surveillance from a nearby high school parking lot also captured portions of the incident.

As Davis chased J.R., he shouted at him three times to "stop running," but J.R. ignored him. Joint Appendix (J.A.) 127 at 00:07–00:10. About twenty-three seconds into the chase, J.R. stopped briefly and crouched near the fence of the empty parking lot. The parties dispute whether J.R. crouched deliberately or tripped.

Davis claims he then saw J.R. reach to the bottom of his pant leg to retrieve a gun.[1] Davis closed the gap between them, yelled "get on the ground" several times, and drew his firearm. J.A. 127 at 00:23–00:28. Davis then shouted at J.R., "let me see your hands." J.A. 127 at 00:28–00:29. J.R. didn't comply. Instead, he stood up and started running.

At that moment, Davis fired at J.R. but missed. As J.R. continued running, Davis fired nine more rounds,[2] ultimately hitting J.R. in the forehead and killing him.

---

[1] We don't accept this allegation as true, even as it's undisputed that J.R. had a gun.

[2] Davis incorrectly told investigators that he fired "approximately" four shots. J.A. 104.

B.

During the ensuing investigation, Officer Davis claimed that J.R. turned his head towards him during the chase, in what Davis "believed was an attempt to turn his body towards me and raise the firearm . . . to be at a position to fire towards me." J.A. 104. Davis also told investigators that he heard a gunshot.

Police recovered a gun next to J.R.'s hand. Forensic evidence showed that J.R. had been carrying the gun, but that he hadn't fired it.

C.

1.

J.R.'s mother, Brittany Ruffin, brought a Section 1983 action against Davis for improper search and seizure, excessive force, deprivation of due process, and deliberate indifference.[3] Davis moved for summary judgment and asserted qualified immunity.

A magistrate judge recommended denying Davis's motion on the Fourth Amendment excessive force claim. Finding it "difficult to discern J.R.'s movements from either video," the judge considered that J.R. could have tripped while "fleeing in fear from Davis," causing his gun to fall. J.A. 325, 328. And while J.R. picked up the gun, he "never pointed [it] at Davis, [and] never returned fire." J.A. 328.

On those facts, the judge reasoned, there "would be a violation of the Fourth Amendment." J.A. 328 (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting

---

[3] Ruffin also sued the Chief of Police, the City of Columbia Police Department, and the City of Columbia, but she later stipulated to the dismissal of claims against them.

5

from failing to apprehend him does not justify the use of deadly force to do so.")).  And finding such a violation clearly established, the judge concluded that Davis wasn't entitled to qualified immunity.

2.

The district court adopted the report and recommendation and denied Davis's motion for summary judgment based on qualified immunity.  In so doing, the court found three undisputed facts: "(1) J.R. possessed a firearm; (2) J.R. ignored Davis's repeated commands to stop running, get on the ground, and show his hands; and (3) J.R. turned to face Davis in the final moments of the chase, as shown by the impact of Davis's round."[4] J.A. 370.

But the court found "no *undisputed evidence* that [J.R.] made a furtive or threatening movement with [his] weapon."  J.A. 371.  Because J.R.'s movements were in dispute and "because case law establishes that officers may not use deadly force absent an immediate threat," the court concluded that "the magistrate judge correctly denied qualified immunity."  J.A. 380–81.

This appeal followed.

---

[4] The district court didn't explicitly find it undisputed that J.R. crouched earlier in the chase.  But no one disputes that fact, and the video evidence clearly shows that he did.  So we can accept this fact as true, even while we acknowledge that why J.R crouched is hotly disputed.

II.

We start with our jurisdiction. *See Cooper v. Sheehan*, 735 F.3d 153, 157 (4th Cir. 2013). On an interlocutory appeal like this, we don't have jurisdiction over a district court's summary judgment order denying qualified immunity "insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995). In other words, we "lack jurisdiction to consider [any] challenges to the district court's determination[] . . . that genuine disputes of material fact exist on this record." *Cooper v. Doyle*, 163 F.4th 64, 78 (4th Cir. 2025).

We may, however, "exercise jurisdiction over a claim that there was no violation of clearly established law accepting the facts as the district court viewed them." *Id.* (citation modified). So we can consider whether the three undisputed facts found by the district court entitle Davis to qualified immunity.

III.

Section 1983 "creates a cause of action against any person who, acting under color of state law, abridges a right arising under the Constitution or laws of the United States." *Sheehan*, 735 F.3d at 158. But government officials sued under Section 1983 are "entitled to invoke qualified immunity" to obtain "immunity from suit itself." *Id.* Such immunity "protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011). So we must ask two questions: (1) "whether a

7

constitutional violation occurred"; and (2) "whether the right violated was clearly established." *Sheehan*, 735 F.3d at 158 (citation modified).

We review a district court's denial of qualified immunity on summary judgment de novo. *Halcomb v. Ravenell*, 992 F.3d 316, 319 (4th Cir. 2021).

IV.

A.

We turn first to whether Davis violated J.R.'s Fourth Amendment right to be free from deadly force. "[T]he use of deadly force is a seizure subject to . . . the Fourth Amendment." *Garner*, 471 U.S. at 7. That provision permits an officer to use deadly force only if the officer has "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id.* at 11.

To determine whether probable cause existed, we ask if the officer's use of deadly force was "objectively reasonable in light of the facts and circumstances confronting him." *Hensley*, 876 F.3d at 582 (citation modified). Three factors guide this totality-of-the-circumstances inquiry: (1) "the severity of the crime"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The first factor, severity of the crime, favors J.R. "Davis was investigating reports of teenagers riding bikes and looking into cars." J.A. 372. That investigation doesn't suggest a crime, let alone a serious one. *See Jones v. Buchanan*, 325 F.3d 520, 528 (4th

Cir. 2003) ("Even in a case in which the plaintiff had committed a crime, when the offense was a minor one, we have found that the first *Graham* factor weighed in plaintiff's favor." (citation modified)).

The third factor, evading arrest, weighs in Davis's favor. It's undisputed that J.R. ignored Davis's commands to "stop running," "show me your hands," and "get on the ground." J.A. 366 n.5.

So we come to the second and "most important" factor: whether J.R. posed an immediate threat to the officer's or anyone else's safety. *Lewis v. Caraballo*, 98 F.4th 521, 531 (4th Cir. 2024) (citation modified). Davis claims that he acted reasonably because he "objectively perceived an immediate danger when J.R. failed to follow his clear commands, was visibly holding a handgun firmly in his control, crouched down and turned his head towards Officer Davis." Appellant's Br. at 24.

We're not persuaded. The district court found any "evidence concerning J.R.'s movements" at this point "ambiguous." J.A. 375. To the extent Davis challenges that factual finding, we lack jurisdiction. *Doyle*, 163 F.4th at 78. Even so, the moment that J.R. was crouched isn't the one that "matters most." *Barnes v. Felix*, 605 U.S. 73, 80 (2025). That's because any justification Davis might have had for using deadly force when J.R. crouched dissipated when J.R. turned away from Davis and ran.

To be clear, we haven't put on "chronological blinders" in assessing Davis's use of deadly force. *Id.* at 82. But even considering that J.R. crouched briefly before he ran again, ignored Davis's commands, and was armed, a jury could still find that Davis acted unreasonably. *See Aleman v. City of Charlotte*, 80 F.4th 264, 294 (4th Cir. 2023)

9

("[D]eadly force cannot be used simply because a suspect is armed and has ignored commands.").

True, an officer need not "wait until a gun is pointed at him" before using deadly force. *Knibbs v. Momphard*, 30 F.4th 200, 222 (4th Cir. 2022). But "the officer or another person [must still be] *threatened* with the weapon." *Sheehan*, 735 F.3d at 159; *see also Knibbs*, 30 F.4th at 225 ("[A] weapon only justifies the use of deadly force if that person makes some sort of furtive or other threatening movement with [it]."). And here, it's disputed that J.R. made a "furtive or other threatening movement with the weapon that would have signaled an intent to use it in a way that imminently threaten[ed] the safety of [Davis] or another person" at any point during the chase. *Aleman*, 80 F.4th at 291–92 (citation modified).

The only undisputed movement J.R. made was "turn[ing] [his head] to face Davis in the final moments of the chase, as shown by the impact of Davis's round." J.A. 370. But viewing that fact in plaintiff's favor, as we must, that isn't a "movement[] that could reasonably be perceived as dangerous." *Benton v. Layton*, 139 F.4th 281, 292 (4th Cir. 2025).

## B.

We accept "that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving," and "we avoid judging the officer's conduct with the 20/20 vision of hindsight." *Clem v. Corbeau*, 284 F.3d 543, 550 (4th Cir. 2002) (citation modified). But here, a reasonable officer would have

recognized that he faced no imminent threat when an armed suspect was running away and made no threatening movement with his weapon.

So under the totality of the circumstances, Davis's use of deadly force wasn't justified and violated J.R.'s Fourth Amendment rights.

## V.

We turn next to the clearly established prong. "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). The "right need not be recognized by a court in a specific factual context before such right may be considered 'clearly established' for purposes of qualified immunity." *Wilson v. Prince George's Cnty.*, 893 F.3d 213, 221 (4th Cir. 2018). But "[t]he rule's contours" must be defined enough so "it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Wesby*, 583 U.S. at 63 (citation modified).

Here, the question is whether it was clearly established in April 2020 that an officer would violate the Fourth Amendment by using deadly force against an armed suspect who runs from an officer, ignores police commands, crouches momentarily before running again, then turns his head to look behind him as he's running, but doesn't raise his weapon or make any other threatening movements. As in *Knibbs*, "[w]e recognize that neither the Supreme Court nor this Circuit has considered a qualified immunity case with a fact pattern precisely identical to the instant one." 30 F.4th at 223. "[B]ut that does not preclude a finding that the right was clearly established." *Id.*

11

Since our 2013 decision in *Cooper v. Sheehan*, we've repeatedly warned officers that it's not objectively reasonable to use deadly force against an armed suspect unless "based on a reasonable assessment, the officer or another person is *threatened* with the weapon." 735 F.3d at 159. So when Davis shot and killed J.R. in April 2020, it was "clearly establish[ed] that the failure to obey commands by a person in possession of . . . a weapon only justifies the use of deadly force if that person makes some sort of furtive or other threatening movement with the weapon." *Knibbs*, 30 F.4th at 225 (citing several pre-2020 cases).

Again, there's no undisputed evidence that J.R. threatened Davis with his weapon or otherwise. Absent such evidence, Davis violated J.R.'s clearly established "right to be free from deadly force when posing no threat." *Sheehan*, 735 F.3d at 160.

VI.

For these reasons, the district court's judgment is

*AFFIRMED.*

12