697 S.E.2d 551

**Martha Lewin ARGOE, Appellant,**

v.

**THREE RIVERS BEHAVIORAL CENTER AND PSYCHIATRIC SOLUTIONS, Its Successor; Phyllis Bryant–Mobley, MD; Glenn Hooker, MD; Aiken Regional Medical Center, Aurora Pavilion; David A. Steiner, MD; Cheryl C. Dodds, MD; Doris Ann Burrell, RN; Carolina Care Plan; James F. Walsh, Jr.; G. Lewis Argoe, Jr.; and George L. Argoe, III, Defendants,**

**Of Whom James F. Walsh, Jr. is the Respondent.**

**No. 26844.**

Supreme Court of South Carolina.

Heard March 17, 2010.

Decided July 26, 2010.

Rehearing Denied Sept. 2, 2010.

Charles M. Black, Jr. and Mitchell C. Payne, both of Warner Payne & Black, of Columbia, for Appellant.

M. Dawes Cooke, K. Michael Barfield, and John W. Fletcher, all of Barnwell Whaley Patterson & Helms, of Charleston, for Respondent.

Chief Justice TOAL.

In this case, Martha Lewin Argoe (Appellant) appeals the trial court's order granting summary judgment to Attorney James F. Walsh, Jr. (Respondent). We affirm.

## FACTS/PROCEDURAL BACKGROUND

Appellant filed the underlying lawsuit against Respondent arising out of his representation of her husband, Lewis M. Argoe, Jr. (Husband), and son, G. Lewis Argoe, III (Son). Although now divorced, Appellant and Husband were experiencing marital difficulties at the time Respondent represented Husband and Son.[1]

Husband and Son entered into an attorney-client relationship with Respondent, informing him that they were seeking his help in protecting Appellant from her own irresponsible and erratic behavior. They told Respondent that Appellant was acting strangely and had become financially irresponsible.[2] Specifically, Husband and Son informed Respondent that Appellant had taken out a loan against a condominium she owned in Beaufort County, South Carolina (the Beaufort Property). Appellant told no one about the loan, allowed it to go into default, and the Beaufort Property was about to enter foreclosure. Respondent learned that Son was Appellant's attorney-in-fact pursuant to a Durable Power of Attorney executed by Appellant on April, 20, 2004.[3] In order to avoid financial disaster, Respondent assisted Son in the transfer of title to the Beaufort Property to a trust for the benefit of Appellant. Son was the residual beneficiary to the trust and would receive legal title to the Beaufort Property in the event

---

1. The legal issues presented in this case arise out of Respondent's representation of Son. However, Respondent also assisted Husband in the filing of an Application for Involuntary Emergency Hospitalization for Mental Illness, which caused Appellant to be admitted against her will to the South Carolina Department of Mental Health Psychiatric Hospital.

2. In addition to sharing details about Appellant's financially irresponsible behavior, Husband and Son told Respondent that Appellant claimed to be tormented by demons and witches and had become paranoid.

3. Prior to April 20, 2004, Husband was Appellant's attorney-in-fact. Appellant claims she made Son her attorney-in-fact because she feared husband would use this power to harm her.

of Appellant's death. Pursuant to Appellant's then-existing estate plan, Son was already to receive the property upon her death. Thus, the creation of the trust at issue was consistent with the status quo.

Appellant alleges that Husband orchestrated the transfer of title to the Beaufort Property and her involuntary commitment because he feared she was going to divorce him. Husband and Son maintain these actions were taken to protect Appellant from herself. Respondent understood Husband and Son's motivations to be benevolent and there is no evidence in the record to indicate that he had reason to believe otherwise.

On August 15, 2006, Appellant filed an action against Respondent in Beaufort County asserting various causes of action, including setting aside influenced transactions, professional negligence, breach of fiduciary duty, breach of trust, invasion of privacy, intentional infliction of emotional distress, violation of civil rights, conspiracy, conversion, and abuse of process. On June 6, 2007, Appellant filed another action in Lexington County arising out of the same facts and circumstances, but naming additional defendants. The two lawsuits were combined in Lexington County. Respondent filed a motion for summary judgment, which was granted by the trial court as to all causes of action.

## ISSUES

Appellant timely filed a notice of appeal and presents the following issues for review:

I. Did the trial court err in granting summary judgment because it found no legally cognizable duty owed by Respondent to Appellant?

II. Did the trial court err in granting summary judgment as to Appellant's cause of action for intentional infliction of emotional distress?

III. Did the trial court err in granting summary judgment as to Appellant's cause of action for legal malpractice?

IV. Did the trial court err in granting summary judgment as to Appellant's cause of action for abuse of process?

V. Did the trial court err in granting summary judgment because it found no conflict of interest between Respondent and Appellant?

## Standard of Review

■ Appellate courts review the grant of summary judgment under the same standard applied by the trial court. *Houck v. State Farm Fire & Cas. Ins.*, 366 S.C. 7, 11, 620 S.E.2d 326, 329 (2005). Summary judgment is appropriate where there are no genuine issues of material fact and it is clear the moving party is entitled to a judgment as a matter of law. Rule 56(c), SCRCP. In determining whether any triable issues of fact exist, the evidence and all inferences that reasonably can be drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Hansson v. Scalise Builders of S.C.*, 374 S.C. 352, 355, 650 S.E.2d 68, 70 (2007).

## Analysis

### I. Duty

■ Appellant argues she had an attorney-client relationship with Respondent arising out of his representation of Son. Therefore, Appellant asserts that the transfer of title to the Beaufort County Property without her knowledge breached a duty of care Respondent owed to her. We disagree.

■ "Generally, 'an attorney is immune from liability to third persons arising from the performance of his professional activities as an attorney on behalf of and with the knowledge of his client.'" *Pye v. Estate of Fox*, 369 S.C. 555, 564, 633 S.E.2d 505, 509 (2006) (quoting *Gaar v. N. Myrtle Beach Realty Co., Inc.*, 287 S.C. 525, 528, 339 S.E.2d 887, 889 (Ct.App.1986)). Further, an attorney owes no duty to a non-client unless he "breaches some independent duty to a third person or acts in his own personal interest, outside the scope of his representation of the client." *Stiles v. Onorato*, 318 S.C. 297, 300, 457 S.E.2d 601, 602 (1995).

We find that Appellant was not Respondent's client and, therefore, was not owed a duty of care arising from such a relationship. The April 20, 2004 Durable Power of Attorney executed by Appellant unequivocally appointed Son as her attorney-in-fact to act on behalf of Appellant "in all matters pertaining to [her] care and maintenance." Specifically, Appellant appointed Son to act in her name and gave him broad

powers with respect to her estate, including the power to convey real estate.[4]  Because Respondent represented Son and not Appellant in the Beaufort Property transaction, the only duty of care arising out of that relationship was owed to Son.  Thus, we agree with the trial court's finding that Respondent did not owe a duty of care to Appellant.

## II.  Intentional Infliction of Emotional Distress

■  Appellant argues that the trial court erred in granting Respondent's motion for summary judgment with respect to Appellant's cause of action for intentional infliction of emotional distress.  We disagree.

■  In order to recover for intentional infliction of emotional distress, a plaintiff must establish:

1.  The defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct;

2.  The conduct was so "extreme and outrageous" so as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;"

3.  The action of the defendant caused plaintiff's emotional distress; and

---

4.  Specifically, by way of the April 20, 2004 Durable Power of Attorney, Appellant empowered Son to:

[A]llot, assign, buy, care for, collect, contract with respect to, continue any business of [hers], convey, convert, endorse, deal with, dispose of, enter into, exchange, hold, improve, incorporate any business of [hers], invest, endorse, cash, lease, manage, mortgage, grant and exercise options with respect to, take possession of, pledge, receive, release, repair, sell, sue for and in general, to exercise all the powers in the management of [her] affairs and estate which any individual could exercise in the management of similar property owned in his own right, upon such terms and conditions as [her] attorney-in-fact may seem best, and to execute and deliver any and all instruments and to carry and to do any and all acts which [her] attorney-in-fact may deem proper or necessary to care for [her] in a manner and to the same degree of comfort to which [she] ha[s] become accustomed to living.

4. The emotional distress suffered by the plaintiff was "severe" such that "no reasonable man could be expected to endure it."

*Hansson,* 374 S.C. at 356, 650 S.E.2d at 71.

The trial court granted Respondent's motion for summary judgment with respect to Appellant's cause of action for intentional infliction of emotional distress because it found no evidence in the record to suggest that Respondent's conduct was "so extreme and outrageous as to exceed all bounds of decency." *Id.* Appellant argues that Respondent's conduct was sufficiently extreme and outrageous to survive a summary judgment motion because he owed Appellant a duty of care arising out of an attorney-client relationship, thus breaching a duty owed to Appellant. Because we find that Appellant was not owed a duty of care arising out of an attorney-client relationship with Respondent, this argument is without merit. Thus, we affirm the trial court's grant of summary judgment as to Appellant's cause of action for intentional infliction of emotional distress.

### III. Legal Malpractice

Appellant argues that the trial court erred in granting Respondent's motion for summary judgment as to the cause of action for legal malpractice. We disagree.

A plaintiff in a legal malpractice action must establish four elements:

1. The existence of an attorney-client relationship;

2. A breach of duty by the attorney;

3. Damage to the client; and

4. Proximate cause of the plaintiff's damages by the breach.

*Rydde v. Morris,* 381 S.C. 643, 647, 675 S.E.2d 431, 433 (2009) (citing *Smith v. Haynsworth, Marion, McKay & Geurard,* 322 S.C. 433, 435 n. 2, 472 S.E.2d 612, 613 n. 2 (1996)). Appellant cannot satisfy the first element of this cause of action because, as discussed above, there is no evidence in the record to suggest that an attorney-client relationship existed between Respondent and Appellant. Thus, the trial court correctly

granted Respondent's motion for summary judgment with respect to the cause of action for legal malpractice.

## IV.  Abuse of Process

██ Appellant argues the trial court erred in granting summary judgment as to her cause of action for abuse of process.  We disagree.

██ "The essential elements of abuse of process are an ulterior purpose and a willful act in the use of the process not proper in the conduct of the proceeding." *Hainer v. Am. Med. Intern., Inc.,* 328 S.C. 128, 136, 492 S.E.2d 103, 107 (1997) (citing *Huggins v. Winn–Dixie Greenville, Inc.,* 249 S.C. 206, 153 S.E.2d 693 (1967)).  The abuse of process tort provides a remedy for one damaged by another's perversion of a legal procedure for a purpose not intended by the procedure. *Food Lion, Inc. v. United Food Commercial Workers Int'l Union,* 351 S.C. 65, 69, 567 S.E.2d 251, 253 (Ct.App.2002).

We find no evidence in the record to suggest that Respondent had an "ulterior purpose" to his actions, let alone a "willful act in the use of the process not proper in the conduct of the proceeding." *Hainer,* 328 S.C. at 136, 492 S.E.2d at 107.  In fact, the record indicates the contrary:  Respondent acted with Appellant's best interests in mind, transferring her property to a trust for her benefit so that she might not bring financial harm to herself.  Thus, we affirm the trial court's grant of summary judgment as to Appellant's cause of action for abuse of process.

## V.  Conflict of Interest

██ Appellant argues the trial court erred in granting summary judgment because there was evidence that Respondent had a conflict of interest with her.  We disagree.

Appellant's argument as to conflict of interest is predicated on the assumption that she was Respondent's client for the purposes of the Beaufort Property transaction.  For the aforementioned reasons, no such attorney-client relationship existed, thus Appellant's argument is without merit.

Nonetheless, Appellant also argues Respondent had a conflict of interest with her arising out of an alleged self-gift to Son effectuated by the creation of the trust.  The logic of this

argument is puzzling because even if the creation of the trust effectuated a self-gift to Son a conflict of interest between Respondent and Appellant could not exist absent the existence of an attorney-client relationship. Nonetheless, addressing the argument raised, there is no evidence in the record indicating a self-gift to Son was effectuated by the creation of the trust.

In responding to Appellant's allegations concerning a self-gift to Son, the dissent recognizes "an attorney may be liable to a third party where he conspires with a client against a third." However, the dissent goes too far when it states evidence in the record suggests a conspiracy between Respondent and Son against Appellant, and this evidence is sufficient to survive a motion for summary judgment in this matter.

The record indicates Son retained Respondent to represent him in his capacity as Appellant's attorney-in-fact for the purpose of protecting Appellant's assets. Specifically, Son wanted to protect the Beaufort Property from Appellant's financial irresponsibility, an action permitted pursuant to Appellant's Durable Power of Attorney. The creation of the trust for the benefit of Appellant achieved the goal of protecting the Beaufort Property from Appellant's irresponsible behavior and there is no evidence in the record to suggest the transfer was intended as, or effectively created, a self-gift to Son. The fact that Son was the named residuary beneficiary of the trust does not compromise the legality of the transfer, or suggest a conspiracy between Son and Respondent. As residuary beneficiary, Son did not obtain legal title to the property and none of the powers that would accompany such an ownership interest. Additionally, naming Son the residuary beneficiary of the trust paralleled Appellant's estate plan and such a decision was presumably made because it mirrored Appellant's desires for the Beaufort Property. Thus, the record does not suggest Son and Respondent engaged in a conspiracy against Appellant resulting in a self-gift to Son, but rather indicates that Son and Respondent intended to protect Appellant's assets from her infirmities while honorably considering her intentions for the property as manifested in her estate plan.

Additionally, the dissent would create a rule that would extend an attorney's liability to those in privity with his or her client. We disagree with this general rule and vehemently oppose its adoption as it would apply in this situation. The Durable Power of Attorney at issue in this case was executed by Appellant so that Son could protect her interests from her poor judgment and erratic behavior. This type of arrangement is commonplace and serves a good purpose: the protection of the infirm from their own infirmities. The fact that an infirm principal of a Durable Power of Attorney does not appreciate an action taken by an attorney-in-fact pursuant to the power she willfully gave him, as is the case here, does not create liability for the attorney facilitating a transaction that is called into question.[5] Recognizing a duty owed to a third-party, even one in privity to an attorney's client, would undermine the good and common practice of executing Durable Powers of Attorney that are intended to provide the principal protection from their own infirmities.

For the aforementioned reasons, we find no conflict of interest existed between Respondent and Appellant and that no self-gift was effectuated by the creation of the trust.

### CONCLUSION

Respondent did not owe any duty to Appellant arising out of his representation of Son in the Beaufort Property transaction; thus, the trial court's order granting summary judgment with respect to all causes of action should be affirmed. Additionally, no conflict of interest existed between Respondent and Appellant. Therefore, the trial court's order is affirmed.

BEATTY, KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

---

5. To be clear, third-party liability in a situation such as this could arise if it is shown that an attorney "breaches some independent duty to a third person or acts in his own personal interest, outside the scope of his representation of the client." *Onorato,* 318 S.C. at 300, 457 S.E.2d at 602. There is no evidence in the record to support a claim that Respondent acted in any manner that would create liability to third parties, including Appellant.

Justice PLEICONES.

I respectfully dissent. In my view, there are genuine issues of material fact which preclude summary judgment here.

I agree that, generally, where an individual who holds a power of attorney hires an attorney, that attorney's client is the attorney-in-fact and not the principal who executed the power. *E.g., Estate of Keatinge v. Biddle,* 789 A.2d 1271 (Me.2002). I also agree that, in general, an attorney who acts in good faith with the authority of his client is not liable to a third party for the performance of his professional services. *E.g., Gaar v. North Myrtle Beach Realty, Inc.,* 287 S.C. 525, 339 S.E.2d 887 (Ct.App.1986). However, an attorney may be liable to a third party where he conspires with a client against that third party, *see Stiles v. Onorato,* 318 S.C. 297, 457 S.E.2d 601 (1995), or where his professional negligence injures a party in privity with his client. *Gaar, supra.*

In other words, I largely agree with the majority on the applicable law. Where I disagree, however, is with the consequences, at least for the purposes of summary judgment, of respondent's advice and assistance to Son to exercise his authority as Appellant's attorney-in-fact to transfer title to the Beaufort Property from Appellant's name into a trust. Unlike the majority, I am not persuaded that, because at the time the property was transferred to the trust, Son was also the devisee under Appellant's current will, it can be said that this transfer was, as a matter of law, not a self-gift.[6] Until the transfer of title to the trust, Appellant had the right to dispose of the property during her lifetime or to change her testamentary disposition of the Beaufort Property. Once the trust was established, however, she could no longer dispose of this property during her lifetime or in her will.[7]

In my opinion, the evidence here is sufficient to withstand respondent's motion for summary judgment on appellant's

**6.** It appears that the majority and I agree that Son's power of attorney did not contain a provision permitting Son to make a gift to himself. *See e.g. Loftis v. Eck,* 288 S.C. 154, 341 S.E.2d 641 (Ct.App.1986).

**7.** It appears that the trust has been dissolved and fee simple title to the property returned to Appellant as part of a settlement between her and Husband and Son. In my view, while this fact may affect Appellant's damages it does not impact Respondent's potential liability.

claims of legal malpractice and conflict of interest. I would reverse.