**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Snee Farm Lakes Homeowner's Association, Inc., Individually and on Behalf of those similarly situated, Appellant,

v.

The Commission of Public Works for the Town of Mount Pleasant d/b/a Mount Pleasant Waterworks, Respondent.

Appellate Case No. 2021-001395

Appeal From Charleston County
R. Markley Dennis, Jr., Circuit Court Judge

Unpublished Opinion No. 2025-UP-113
Heard May 6, 2024 – Filed April 2, 2025

**AFFIRMED**

Clayton B. McCullough and Ross A. Appel, both of McCullough Khan, LLC; James L. Ward, Jr., of McGowan Hood Felder & Phillips; and Susan Ranee Saunders, of Motley Rice, LLC, all of Mount Pleasant, for Appellant.

Gray Thomas Culbreath, of Gallivan, White & Boyd, PA, of Columbia; Eleanor Lasseigne Jones, of Gallivan, White & Boyd, PA, of Charleston; and David G.

Jennings, James Atkinson Bruorton, IV, and Timothy James Wood Muller, all of Rosen Hagood LLC, of Charleston, all for Respondent.

Bryan Eric Shytle, of the Municipal Association of South Carolina, of Columbia, for Amicus Curiae Municipal Association of South Carolina.

---

**PER CURIAM:** Snee Farm Lakes Homeowner's Association, Inc. (Snee Farm), appeals the circuit court's order granting summary judgment in favor of the Commission of Public Works for the Town of Mount Pleasant d/b/a Mount Pleasant Waterworks (MPW), arguing the circuit court erred by (1) misunderstanding the applicable legal framework in evaluating the lawfulness of municipal utility rates and (2) misapplying the standard of review in ruling on a motion for summary judgment. We affirm.

**FACTS**

Snee Farm, a horizontal property regime for a multi-family residential unit, brought this action against MPW as a putative class action in June 2018, alleging MPW charged its commercial customers excessive monthly basic facility charges (BFCs).[1] It alleged MPW charged its commercial customers, including Snee Farm,[2] monthly BFCs in addition to charges for traditional water and sewer fees based on volumetric usage.[3]

In its amended complaint, Snee Farm asserted it had been overcharged thousands of dollars in BFCs. It stated MPW calculated its BFCs based on the number of Residential Equivalent Units (REUs)—one REU being equal to 9,000 gallons per month—that were assigned to each customer account when the account was first

---

[1] The circuit court certified the class, which was defined as "[a]ll current and former MPW commercial customers who paid excessive BFC in excess of $100, defined as a customer's average daily usage from January 1, 2014 (or any later date of service inception) to December 31, 2019 being less than that customer's assigned [Residential Equivalent Units]." Class notice was sent to 526 class members; none opted out.

[2] Snee Farm alleged it had a single water meter and that the individual unit owners were neither separately billed nor MPW customers.

[3] The rates for actual volumetric use are not at issue.

opened.  Snee Farm asserted MPW's ratemaking methodology violated South Carolina law because the REUs assigned to each customer far exceeded that customer's use in most cases and customers were therefore paying excessive BFCs. In particular, Snee Farm stated it was assigned 148 REUs—approximately 1,332,000 gallons per month—but that its actual consumption was almost always far less than this amount.  It further alleged MPW never adjusted the REU assignments for any of its customers despite its awareness of this discrepancy. Snee Farm alleged the class was forced to pay excessive BFCs for years or risk interruption of service.  Snee Farm sought a declaratory judgment that state law prohibited MPW from imposing and collecting excessive BFCs during the class period, that the class members suffered financial damages, and that MPW owes refunds for the excessive BFCs charged during the period.

In its answer, MPW asserted Snee Farm's REU assignment resulted from Snee Farm's own engineering company requesting that number of REUs when it first established water service.  MPW additionally alleged Snee Farm knew or should have known its water usage and REU assignment based on its bills and other MPW policies and rates.  Regarding its rate calculations, MPW referenced its Cost Recovery Policy.  Policy 7.2 of the Cost Recovery Policy provides,

> [MPW] incurs fixed costs for providing services to its customers including, but not limited to, Renewal and Replacement (R&R) debt service, capital costs, operating and maintenance costs, and general administrative costs. The BFC is a charge for the reservation of capacity based on the total active REUs assigned to a property.  To ensure the purchased capacity remains available, all BFCs must be paid.

MPW stated the REUs allocated to each property were multiplied against the BFCs to establish the customer's billed amount.  MPW stated that in establishing the number of REUs for a property, it considered the South Carolina Department of Health and Environmental Control's unit contributory loadings, actual consumption records from other similar facilities, and information provided by the customer's engineer calculating anticipated usage.  MPW asserted Snee Farm's engineer helped select 148 REUs for its property.  MPW stated a BFC is a capacity—as opposed to a usage—charge and that REUs create the maximum number of gallons a customer can use on a monthly basis before being subject to excessive use charges, which were far greater than the amounts charged for BFCs.  MPW stated

that once a customer reduced its REUs, "additional impact fees[4] must be paid to increase the REUs or back BFC[s] must be paid, whichever is less."

MPW moved for summary judgment, arguing its billing practices complied with sections 5-31-250 and 5-31-670 of the South Carolina Code (2004). Specifically, MPW argued the rate system based on REUs was reasonable under section 5-31-670. MPW further asserted the statute of limitations, voluntary payment doctrine, and Snee Farm's failure to mitigate damages barred its claims.

In opposing the motion, Snee Farm admitted MPW allowed customers to request to decrease their REUs and thereby reduce their BFCs. Snee Farm asserted that although a customer incurs no up-front cost to do so, it must relinquish its REUs and therefore face potential excessive use charges if it later exceeded this newly reduced capacity.

Snee Farm argued whether MPW's ratemaking methodology was reasonable was a question of fact. Snee Farm asserted that a July 2014 engagement letter between Raftelis Financial Consultants, Inc. and MPW, which was attached as an exhibit, indicated MPW learned that forty percent of the REU capacity it charged its commercial customers for had gone consistently unused for the previous seven years. Snee Farm asserted that MPW made no effort to ensure the REUs used in calculating a customer's BFC accurately reflected the customer's actual consumption demand over time and instead capitalized on the excess charges by increasing BFC rates for water and wastewater in 2015. Snee Farm argued this practice was suspect under MPW's mandate to set reasonable rates with a rational nexus between what customers were paying relative to what they were receiving. Snee Farm further argued MPW should have periodically adjusted customers' REUs to match their actual use—"right-sized"—on its own because it had the capability and resources to do so.

Both parties acknowledged that in 2018, MPW sent a letter to its commercial customers, including Snee Farm, suggesting the customers reduce their REUs based on their apparent water needs as shown by their recent consumption and that the suggested REU reduction would result in reduced monthly BFCs for the customer. Snee Farm received this letter suggesting that it reduce its REUs from

---

[4] "Impact fees" are fees a customer must pay when establishing water and wastewater services to cover the cost of expanding the water and wastewater infrastructure to serve development.

148 to 76 based on its average monthly consumption for its highest quarter. Snee Farm never attempted to reduce its REUs prior to bringing this action.

Snee Farm argued the voluntary payment doctrine did not apply because water and wastewater services were not discretionary. Snee Farm asserted the statute of limitations did not bar its claims because it did not receive notice of the suspect practices until it received MPW's 2018 letter. Finally, Snee Farm argued the doctrine of mitigation of damages did not apply because reducing its REUs as MPW's policy required would have caused Snee Farm to lose something of value it had already paid for.

During the summary judgment hearing, Snee Farm stated it was not attacking the concept of BFCs or an REU-based charge in this case. Snee Farm asserted it was, instead, arguing MPW had the burden of right-sizing REU assignments for purposes of calculating BFCs instead of placing this burden on customers. Snee Farm argued MPW should not condition the reduction of BFCs on forfeiting the capacity assets that the customers "purchased for thousands of dollars per REU or the impact fees themselves." It further contended MPW could have separated the REUs for capacity assets and REUs for base charges, which would have allowed MPW to reduce the BFC without also reducing the customer's capacity assets. Snee Farm did not dispute that customers could have ascertained from the information on their monthly water bills that they were underutilizing the REUs assigned to them. MPW argued Snee Farm's own expert testified the system based on water meter size was acceptable for calculating BFCs and that, under such system, the customer must initiate a new water meter size to reduce its BFC. MPW argues this was the equivalent of an MPW customer requesting to reduce its REU assignment and thus its BFC. MPW argued that because Snee Farm's expert opined BFCs based on the size of the water meter were acceptable, basing BFCs on REUs was also reasonable.

The circuit court granted summary judgment in favor of MPW, concluding MPW's practice of basing its rate structure on REUs rather than actual water usage did not violate any South Carolina statute. The circuit court specifically considered sections 5-31-250 and 5-31-670 in considering this issue. The circuit court reasoned that 5-31-670 required only that the charge for the use of water be "reasonable" and that because Snee Farm presented no allegations regarding the quality of service it received, it failed to meet its burden of showing the rate structure was unreasonable.

The circuit court rejected Snee Farm's arguments that section 6-1-300(6) of the South Carolina Code (2004) (amended 2022) and *Azar v. City of Columbia*, 414 S.C. 307, 778 S.E.2d 315 (2015) supported its claim that MPW's rates violated South Carolina law.  The circuit court found this statute and *Azar* distinguishable because they "relate[d] to the way funds collected are 'spent'" rather than the rate structure or method of collection.

The circuit court further concluded Snee Farm provided no "reliable evidence that MPW's rate structure [wa]s unreasonable."  In rejecting Snee Farm's argument that a BFC should be tied to actual use, the circuit court considered the testimony of Snee Farm's own expert, Bryan Mantz, who testified he recommended a fixed charge as part of a utility's rate system to support revenue stability because salaries and benefits as well as debt service were all fixed costs regardless of customer usage.  In addition, the circuit court considered Mantz's testimony regarding BFCs based on water meter size as opposed to capacity reservation.  Specifically, the circuit court noted Mantz's testimony that (1) a BFC based on water meter size was reasonable even though such a system was unrelated to a customer's actual volumetric use; (2) a customer must initiate procuring a new water meter if it wished to reduce its BFC; (3) a customer must pay for the removal of the old water meter and installation of the new water meter; and (4) and a customer must bear the cost of reinstalling a larger water meter if the customer's needs later increased.  Mantz further explained that similar to the REU assignments, a customer's water meter size is selected prior to the commencement of their service based on anticipated—rather than actual—demand.

The circuit court concluded Mantz's testimony showed that the fact a rate system was based on potential future demand or reservation of capacity rather than actual use did not prove the system was unreasonable.  The circuit court further noted Mantz testified a utility is not required to alert a customer to the possibility of reducing its water meter size and does not unilaterally right-size customers' accounts based on their actual water usage.  The circuit court additionally found the statute of limitations, Snee Farm's failure to mitigate damages, and the doctrine of voluntary payment barred Snee Farm's claims.

Snee Farm filed a motion to reconsider, which the circuit court denied.  The circuit court specifically addressed Snee Farm's arguments that it failed to consider the applicable law on service and user fees, misstated the relevant legal framework on reasonableness, and failed to correctly address MPW's affirmative defenses.  In addressing Snee Farm's arguments as to service and user fees, the circuit court "assume[d] that MPW's BFC charge [wa]s a service fee or user fee, and [that

sections] 6-1-300(6) and 6-1-330(B) [of the South Carolina Code (2004)] appl[ied]." The circuit court nevertheless upheld its conclusion that MPW's rates did not violate these statutes. The circuit court reasoned Snee Farm reserved a certain level of service capacity or potential demand of service on the system, and MPW provided service to Snee Farm for that reserved capacity. The circuit court further stated the BFCs, which were based on customers' reserved capacity, were fixed rates that were reasonably proportionate to the value of service received or bearing some relationship to the present or future cost of providing service. The circuit court concluded Snee Farm failed to present facts supporting a finding that MPW could not or did not provide the level of reserved service if and when Snee Farm demanded it. In addition, the circuit court distinguished *Burns v. Greenville Cnty. Council*, 433 S.C. 583, 861 S.E.2d 31 (2021), finding the BFCs based upon assigned REUs provided Snee Farm the ability to have water flow through a customer's faucets at any time on demand regardless of actual use, which was a special benefit not available to the general public. This appeal followed.

## ANALYSIS

### A. Municipal Utility Rates

Snee Farm argues the BFCs are "service or user fees" under section 6-1-300(6) of the South Carolina Code (Supp. 2024). It further contends this provision, in conjunction with section 6-1-330(B), requires that such fees must (1) provide a specific benefit to those paying it and (2) correlate to the amount necessary to pay the costs associated with each customer's service. Snee Farm additionally asserts sections 5-31-250 and 5-31-670 permit MPW to charge only for a customer's "use" and require that its rates must be guided by reasonableness. Snee Farm argues the circuit court failed to address whether the fees comply with the requirements of subsections 6-1-300(6) and 6-1-330(B) that a nexus must exist between the rates and the benefit the customer receives in return. Snee Farm relies upon *Burns* in support of its arguments.

We hold the circuit court did not err by granting summary judgment in favor of MPW. *See Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006) (stating that upon review of the grant of a summary judgment motion, this court "applies the same standard that governs the trial court under Rule 56(c), SCRCP"); *id.* ("Under Rule 56, SCRCP, a party is entitled to a judgment as a matter of law if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."); *see also Argoe v. Three Rivers Behav. Ctr.*

*& Psychiatric Sols.*, 388 S.C. 394, 400, 697 S.E.2d 551, 554 (2010) ("In determining whether any triable issues of fact exist, the evidence and all inferences that reasonably can be drawn from the evidence must be viewed in the light most favorable to the nonmoving party.").

Section 5-31-250 permits the board of commissioners of public works of any town to "supply and furnish water to citizens of the . . . town" and "require payment of such rates, tolls and charges as it may establish for the use of water." § 5-31-250. Section 5-31-670 provides:

> Any city or town or special service district may, after acquiring a waterworks or sewer system, furnish water to persons for *reasonable* compensation and charge a minimum and *reasonable* sewerage charge for maintenance or construction of such sewerage system within such city or town or special service district.

§ 5-31-670 (emphases added). Before it was amended in June 2022, subsection 6-1-300(6) provided:

> "Service or user fee" means a charge required to be paid in return for a particular government service or program made available to the payer that benefits the payer in some manner different from the members of the general public not paying the fee. "Service or user fee" also includes "uniform service charges."

S.C. Code Ann. § 6-1-300(6) (2004). This subsection now provides:

> "Service or user fee" means a charge required to be paid in return for a particular government service or program. "Service or user fee" also includes "uniform service charges". The revenue generated from the fee must:
>
> (a) be used to the benefit of the payers, even if the general public also benefits;
>
> (b) only be used for the specific improvement contemplated;

(c) not exceed the cost of the improvement; and

(d) be uniformly imposed on all payers.

S.C. Code Ann. § 6-1-300(6) (Supp. 2024); *see also* S.C. Code Ann. § 6-1-330(B) (2004) ("The revenue derived from a service or user fee imposed to finance the provision of public services must be used to pay costs related to the provision of the service or program for which the fee was paid. If the revenue generated by a fee is five percent or more of the imposing entity's prior fiscal year's total budget, the proceeds of the fee must be kept in a separate and segregated fund from the general fund of the imposing governmental entity.").

"The test of the reasonableness of rates established by a public service district is the service received. Moreover, the burden of proof of the unreasonableness or arbitrariness of rates is upon the person attacking the rate schedule." *H.A. Sack Co. v. Forest Beach Pub. Serv. Dist.*, 272 S.C. 235, 238, 250 S.E.2d 340, 341 (1978) (citation omitted).

Assuming, without deciding, that the requirements set forth in *Burns* and subsection 6-1-300(6) apply, and viewing the facts in the light most favorable to Snee Farm, we hold no genuine issue of material fact exists as to whether the fees at issue comply with these requirements.

First, the circuit court correctly determined the fees benefit the payers in a manner different from the members of the general public. Snee Farm acknowledges a customer can request a reduction of its BFC by relinquishing the unused portion of its assigned REUs at no cost and would have to pay impact fees or back BFCs only if it later determined it needed the reserved capacity it relinquished. MPW's Cost Recovery Policy provides, "To ensure the purchased capacity remains available, all BFCs must be paid." Further, Snee Farm does not dispute that even after receiving MPW's letter explaining it could reduce its BFC by reducing its REUs, it failed to request a reduction of its REUs.

Viewing the evidence in the light most favorable to Snee Farm, we find there is no other reasonable inference to be drawn from Snee Farm's unwillingness to release its reserved capacity in the system in exchange for a corresponding reduction in its BFC except that Snee Farm received a benefit from maintaining its reserved capacity through its assigned REUs. Therefore, a rate tied to the measurement of reserved capacity provides a specific benefit to those paying it (by reserving their right to capacity) and correlates to the amount necessary to pay the costs associated

with the service the payer receives. *Cf. Burns*, 433 S.C. at 587-88, 861 S.E.2d at 33 ("The fact the funds are allocated for road maintenance says nothing of any benefit peculiar to the payer of the fee. In fact, every driver on any road in Greenville County—whether their vehicles are registered in Greenville County, Spartanburg County, or in some other state—benefits from the fact the funds are 'specifically allocated for road maintenance.'"); *id.* at 588, 861 S.E.2d at 33 (rejecting the county's additional argument that the ordinance "satisfie[d] subsection 6-1-300(6) because the property owners who pay the charge are the drivers who 'most use the roads' maintained by the funds collected" and stating that "[w]hile Greenville County residents who use the roads every day may derive more benefit from having the roads maintained in good condition, it is still the same benefit every driver gets, no matter where their car is registered"). Moreover, these fees are levied only upon MPW's commercial customers and in this case specifically, a residential community. Therefore, this case does not involve a question of whether the general public also benefits because the general public is not using this service.

Second, Snee Farm does not argue MPW failed to use the fees properly; thus, we need not consider the issue of whether the fee was used only for the specific improvement contemplated and did not exceed the cost of the improvement.

Finally, the fees were uniformly imposed on all payers. Snee Farm alleged the BFCs were imposed on all of MPW's commercial customers and that the BFCs were calculated based on the number of REUs assigned to each customer's account. Therefore, even though not all customers were paying the same amount, the fees were uniform in that MPW calculated the fees in the same manner for all commercial customers and all commercial customers were charged these fees.

Based on the foregoing, we hold Snee Farm failed to set forth a genuine issue as to any material fact regarding whether the rates MPW charged met the standards of *Burns* and sections 6-1-300(6) and 6-1-330(B). Accordingly, we hold the circuit court did not err in granting summary judgment.

## B. Summary Judgment Standard

Snee Farm argues the circuit court failed to view the evidence in the light most favorable to it. Snee Farm argues it submitted evidence tending to show MPW failed to conform the rates it charged to the service it provided, including (1) the Raftelis Engagement Letter & CDM Smith Memorandum, (2) excerpts from Mantz's deposition testimony, and (3) evidence that MPW increased BFC rates

after discovering the incorrect REU assignments. Snee Farm asserts the circuit court additionally ignored evidence from MPW's expert, William Zieburtz, that the magnitude of incorrect REU assignments is relevant to whether inequity exists in the rate structure. Finally, Snee Farm asserts the circuit court erred by granting summary judgment in favor of MPW as to the affirmative defenses of the statute of limitations, failure to mitigate damages, and the voluntary payment doctrine.

We hold the circuit court applied the appropriate standard in addressing MPW's motion for summary judgment and properly viewed the evidence in the light most favorable to Snee Farm. *See Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 463, 892 S.E.2d 297, 301 (2023) (clarifying "that the 'mere scintilla' standard does not apply under Rule 56(c)[, SCRCP,]" and that "the proper standard is the 'genuine issue of material fact' standard set forth in the text of the Rule"); *id.* at 464, 892 S.E.2d at 301 (overruling *Hancock v. Mid-S. Mgmt. Co.*, 381 S.C. 326, 673 S.E.2d 801 (2009), to the extent it is inconsistent with this holding); *see also Law*, 368 S.C. at 434, 629 S.E.2d at 648 ("Under Rule 56, SCRCP, a party is entitled to a judgment as a matter of law if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."); *Argoe*, 388 S.C. at 400, 697 S.E.2d at 554 ("In determining whether any triable issues of fact exist, the evidence and all inferences that reasonably can be drawn from the evidence must be viewed in the light most favorable to the nonmoving party."); *Kitchen Planners*, 440 S.C. at 463, 892 S.E.2d at 301 ("[I]t is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine." (quoting *Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013))).

Viewing the facts in the light most favorable to Snee Farm, we hold it failed to supply evidence to demonstrate a genuine issue of material fact as to whether MPW charged unreasonable rates. *See* § 5-31-670 ("Any city or town . . . may, after acquiring a waterworks or sewer system, furnish water to persons for reasonable compensation and charge a minimum and reasonable sewerage charge for maintenance or construction of such sewerage system within such city or town . . . ."); *see also H.A. Sack Co.*, 272 S.C. at 238, 250 S.E.2d at 341 ("The test of the reasonableness of rates established by a public service district is the service received. Moreover, the burden of proof of the unreasonableness or arbitrariness of rates is upon the person attacking the rate schedule." (citation omitted)). As the circuit court noted, the testimony of Snee Farm's own expert supports the reasonableness of MPW's practice of basing its BFC rates on REU assignments. Further, Snee Farm acknowledged it does not challenge the concept of a BFC based on REUs; instead, it challenges MPW's failure to right-size the BFCs based

on actual use when it had the ability and the information necessary to do so. As to Zieburtz's testimony and the statement in MPW's attorney's email, this evidence does not create a genuine issue as to any material fact. The attorney's suggestion that back-charging BFCs was inequitable does not bear on whether the rate structure itself was reasonable. Similarly, Zieburtz's testimony that he was unaware of another utility that calculates its BFCs based on REUs does not give rise to an inference that such a rate structure was unreasonable. Based on the foregoing, we affirm the circuit court's grant of summary judgment.[5]

**AFFIRMED.**

**GEATHERS, HEWITT, and VINSON, JJ., concur.**

---

[5] Because we affirm the circuit court's grant of summary judgment, we decline to address Snee Farm's remaining arguments as to MPW's affirmative defenses. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when the disposition of a prior issue is dispositive).